# CHARLESTON.

## PRIBBLE v. STANLEY.

## Submitted February 18, 1914.  Decided April 7, 1914.

1.  LANDLORD AND TENANT—*Right of Action—Unlawful Detainer.*
    Where a tenant denies his landlord's title, refuses to pay rent, and holds over after his term, in this case from month to month, the landlord may maintain unlawful detainer to recover possession. (p. 78).

2.  SAME—*Estoppel to Deny Title.*
    A tenant is estopped to deny his landlord's title to the leased premises to the extent necessary to support his own lease. (p. 78).

3. SAME—*Removal of Improvements—Time Allowed.*

A tenant who by his contract of lease has authority to erect on the leased premises buildings or fixtures, and to remove the same at the end of his term, has a reasonable time after the expiration of his lease to remove such buildings or fixtures. (p. 79).

4. SAME.

And when such lease is extended with right to so continue to occupy the leased land for an increased rental, until the land occupied is required by the landlord for particular purposes, such tenant is entitled to notice to quit and a reasonable time thereafter to remove such building or fixtures. (p. 79).

5. JUSTICES OF THE PEACE—*Appeal—Trial De Novo—Judgment.*

In such action of unlawful detainer begun before a justice and appealed by the defendant to the circuit court, the circuit court, on the verdict finding for plaintiff damages for rent accrued to plaintiff may in addition to pronouncing judgment for possession, and pursuant to sections 172 and 218, chapter 50, Code 1913, give judgment also in favor of plaintiff, and against defendant and those who signed his appeal bond as sureties, for the amount of such damages, though in excess of the amount of damages claimed in the summons of the justice. (p. 79).

Error to Circuit Court, Ritchie County.

Action by F. P. Pribble against S. Stanley. Judgment for plaintiff, and defendant brings error.

*Affirmed.*

*Robinson & Prunty,* for plaintiff in error.

*J. Newman* and *R. S. Blair,* for defendant in error.

MILLER, PRESIDENT:

This is an action of unlawful detainer, begun before a justice by plaintiff against defendant, to recover possession of "part of one house and lot of land" in the town of Cairo, Ritchie County, West Virginia, further described as "being a part of a two story, frame, house, situated near the Oil Well Supply Co's. shop,    *    *    *    commonly known as the A. S. Lemon house, situated on a lot of land 20 feet wide and 50 feet long, heretofore leased by the C. & K. V. R. R. Co., to E. Overton, by agreement dated September 2, 1902." The writ also demanded ten dollars damages. Defendant filed an affidavit that the title would come in question, which was met by a counter affidavit, and the justice overruled the point.

The judgment of the justice was for plaintiff, and defendant appealed. On the trial in the circuit court on appeal, defendant again moved to dismiss the action on the ground that the title to the real estate would come in question, which the court overruled.

On the trial in the circuit court the jury found for plaintiff the premises described in the summons, and assessed his damages at eighty and 50-100 dollars; and the judgment thereon complained of was that plaintiff recover from defendant possession of the premises, and also from defendant Stanley, and Shaffer and Fetty, sureties on his appeal bond, the sum of eighty and 50-100 dollars, the damages found by the jury, together with his costs in that court and also in the justice's court expended.

On the motions to dismiss we think the judgment of the justice and of the circuit court thereon were clearly right. The title to the real estate was not controverted. It was conceded that the title to the lot was in the railroad company; and the only question was as to Stanley's right to hold the property as against plaintiff, under whom he originally entered and occupied the same.

The railroad company originally leased the lot to Overton; Overton assigned to Caton, and he to Lemon, who after the expiration of the lease continued to occupy the lot with the house built thereon, but under a new contract with the railroad company, and paid the rent. In April, 1908, he executed a deed of trust on the house and certain other personal property therein described to secure plaintiff the payment of a debt of $204.00, under which trust in July, 1910, the house was sold by the trustee and purchased by plaintiff, who before that had been given possession of the property by Lemon.

The new contract with the railroad company was proven by the agent as follows: "No, sir. It was not continued. The lease expired in September, 1907. The lease was for one dollar a month, and expired in September, 1907, and about a month prior to that Mr. Lemon came to me and asked to renew the lease, and I told him I would ask the superintendent about it and report to him, which I did, and I told him that under the superintendent's instruction, we wouldn't renew the lease, but we would allow him to remain there, and leave his house

there for one dollar and a half, payable monthly, as long as we .didn't need the ground for extension of tracks or something else. And this seemed to be satisfactory to him, and he paid the ground rent for it, after the expiration of the lease, for one dollar and a half, as long as he did pay it.'' The original lease from the railroad company to Overton was unconditional, no time being specified to remove the house from the lot. It is not pretended that the railroad company ever gave notice to Lemon or plaintiff to vacate the lot, or remove the house therefrom, either before or since this suit was brought. True the deed of trust covered only the house on the lot, and the house only was sold and conveyed to Pribble, but as stated, the evidence proves that he was put into possession of the whole premises by Lemon, and thereby necessarily got Lemon's rights under his contract with the railroad company, including the right to remove the building.

Wherefore, as stated, the only question in controversy was as to Stanley's rights as against Pribble under whom he entered. He proved that after entering as tenant under Pribble, and agreeing to pay $3.50 per month rent for the upper story, he moved down into the first story, but this cannot change his relationship to Pribble, for he entered under no one else. He proves that for a long time he paid his rent into the bank, not to the credit of his landlord, as he promised, but to his own credit, and afterwards, being an employee of the railroad company, he drew out this money, and on demand paid it to the railroad company. A little rent was due from Lemon at the date of the deed of trust, and the rent to the railroad company continued in arrears at the time Pribble purchased at the trust deed sale, but no notice to quit had been or ever was given Lemon or Pribble to quit the premises and remove the building.

Denial of his landlord's right and .title and refusal to pay and holding over after his term, from month to month in this case, entitles a landlord to maintain unlawful detainer for possession. *Harrison* v. *Middleton,* 11 Grat. 527; *Emerick* v. *Tavener,* 9 Grat. 220, 58 Am. Dec. 217. And so also on the same and other familiar principles a tenant is estopped from denying his landlord's title to the premises leased, to the

extent necessary to support his own lease, and to the land entered under his lease. *Union Trust & Deposit Co.* v. *Paulhamus,* 74 W. Va. 1, 81 S. E. 547, decided at the present term, and not yet officially reported, and cases cited.

True a tenant is not so estopped as to land to which his landlord's title has ended or expired during the tenancy. 2 Taylor on Landlord and Tenant, section 708; 2 McAdam on Landlord and Tenant, 1445, 1447; but such is not the case here. No re-entry by the railroad company, or notice to quit was ever given to Lemon or Pribble. The new lease contract with Lemon, as did the original lease to Overton, gave right to remove the building, and the new lease to Lemon gave him right to occupy the lot with the building as long as the railroad company did not need the ground for extension of tracks or something else. The railroad company is no party to this suit and its rights are not involved, nor can they be adjudicated. The general rule, however, seems to be that under such a lease contract, as the original lease to Overton and the new contract with Lemon, the tenant has a reasonable time after the termination of the tenancy to remove buildings and fixtures, unless restrained by the terms of the contract, and this is particularly so when as in the lease to Lemon the lease is of uncertain duration or terminable on a contingency. *Gartland* v. *Hickman,* 56 W. Va. 75; 13 Am. & Eng. Ency. Law (2nd Ed.) pp. 649, 650; 24 Cyc. 1101, 1102. And the latter book says, at page 1102, on the authority of numerous cited cases: "The lessee's interest in such improvements is such that he may mortgage the same." See, also, the many cases digested in 32 Am. Dig. Cent. Ed. 642, sections 577-584. In section 581, *Atkinson* v. *Dixon,* 96 Mo. 588, is cited for the proposition that allowing a building to remain on the leased premises under a lease giving right of removal, pending litigation between the parties as to the right to possession of the lot, does not work a forfeiture of the house.

The only other point of error relied on, which we think necessary to notice, is that the verdict and judgment for damages is in excess of the damages demanded in the original writ of the justice. The amount of these damages, $80.50, is not within the jurisdiction of this court; but jurisdiction here does not depend entirely on the amount of those damages. Pos-

session of real estate is also involved, giving us jurisdiction on that ground, and jurisdiction to correct any error in the verdict and judgment for damages. But we see no error in the verdict and judgment for damages. The damages found by the jury are the exact amount of accrued rents from July, 1910, to June, 1912, the date of the trial, twenty-three months at $3.50 per month, $80.50, as shown by the evidence of plaintiff. On appeal to the circuit court in unlawful detainer cases, we do not think the jury and court are limited by the amount of damages named in the writ, and certainly not by the amount of rents accruing pending the suit. Section 164, chapter 50, serial section 2718, Code 1913, governing appeals in such cases, among other things, provides, that the appeal bond shall be "with condition to the effect that the person proposing to appeal, will perform and satisfy any judgment which may be rendered against him by the circuit court on such appeal"; and also that, "In suits for the forcible or unlawful entry upon land, or for the unlawful detention of real estate, if judgment be rendered for recovery of possession of the premises, either with or without damages for detention, the bond shall be in a penalty double the amount of the damages, where judgment has been rendered for damages for the detention, together with an amount sufficient, in the opinion of the justice, or of the circuit court or judge thereof, when the appeal is granted by such court or judge, to cover one year's rent of the premises. In such suits where the judgment is not for damages for detention, the bond shall be in a penalty equal to an amount sufficient, in the opinion of the justice, or of the circuit court or judge thereof, when the appeal is granted by such court or judge, to cover one year's rent of the premises, and an additional sum of not less than fifty nor more than one hundred dollars." The judgment of the justice was for plaintiff and fifteen dollars damages. The penalty of the appeal bond was one hundred dollars, a sum sufficient to cover the damages adjudged and one year's rent. Section 172, serial section 2726, of the same chapter, authorizes the circuit court in cases resulting as this one did to render judgment "against the appellant and those who signed the bond first named in section one hundred and sixty-four." It may be doubted, however, whether this provision governs cases

where the judgment of the justice is not limited to a money judgment; but if not, section 218, serial section 2772, of the same chapter, does govern, for it authorizes judgment not only against the principal in the bond, but also against the sureties for the damages awarded.

Finding no error in the judgment, therefore, it must be affirmed with costs incurred here, in the circuit court and before the justice.

*Affirmed.*