# CHARLESTON.

### KING v. KING et als.
### and
### DAVIS COLLIERY Co. v. PATRICK KING et als.
### and
### KING et als. v. PATRICK KING et als.

## Submitted April 17, 1917. Decided May 1, 1917.

1. LANDLORD AND TENANT—*Disclaimer of Tenure Under Landlord— Effect.*

   By disclaimer of tenure under his landlord and notice thereof to him, a tenant may make his possession of the land adverse to the landlord and thus acquire title in himself, or establish it in a stranger under whom he subsequently holds, by adverse possession under the statute of limitations. (p. 379).

2. SAME—*Landlord's Title—Estoppel to Deny.*

   An under-tenant is not estopped to deny his immediate lessor's title to land not covered by his, (the under-tenant's), lease. (p. 379).

3. DEEDS—*Evidence—Uncertainty—Partial Invalidity.*

   A clause in a deed, reading as follows: ''excepting also two other small tracts of land not to exceed in all three hundred acres,'' is void for uncertainty. Lack of words therein by which to identify the land cannot be supplied by extrinsic evidence. (p. 381).

4. SAME—*Exception—Construction.*

   If the deed in which such clause is found conveys only the unsold lands of the grantor, lands sold by title bond, but not conveyed, prior to the date of the deed, are excepted, because not within the terms of the grant, and the excepting clause performs no important function. (p. 381).

5. SAME—*Vendor's Conveyance—Construction by Parties.*

   If the person in possession of land under such title bond, after

having been defeated in an action of unlawful entry and detainer, by a stranger claiming the land under a title hostile to that of the vendor, took a lease of the land from the vendor, never afterwards paid any purchase money, remained in possession until after the deed for unsold lands was made and repurchased the same land from the grantee in such deed, and thereafter purchase money under the first sale was neither paid nor demanded, the parties to such deed are deemed to have interpreted and construed it as having passed the title to such land, as land unsold at the date thereof, upon the theory of a rescission or abandonment of the first purchase. (p. 381).

6.    JUDGMENT—*Construction and Effect.*

     A judgment in an action of ejectment instituted against a lessee, in possession of the land sued for and adjacent land not sued for, under a single lease executed by a claimant of the land, hostile to the plaintiff, rendered against the lessor, he having been substituted for his tenant as defendant, on the theory that the tenant so in possession and sued was the plaintiff's tenant, does not preclude, by way of adjudication, right to establish title to the adjacent land, by adverse possession, under the hostile claim, by proof of requisite possession thereof by such tenant, subsequent to the date of the institution of the action and after disclaimer of tenure under the plaintiff therein and notice thereof to him. (p. 383).

Appeal from Circuit Court, Randolph County.

Bill in equity by Patrick King, to enjoin two actions of ejectment instituted by the Davis Colliery Company, one against C. B. Rhodes, a tenant of Patrick King and the other against Michael and William King, claimants of the land as against the plaintiff in such actions and also against Patrick King, and to enjoin an action of unlawful entry and detainer by Michael King and William King against Patrick King, and to enjoin civil and criminal proceedings by Michael King against Patrick King, and for a decree quieting and establishing Patrick King's alleged title, in which the Davis Colliery Company filed a cross-bill. Decree adjudging the title to be in Michael and William King, dissolving the injunctions granted on the bill without dismissing the bill, and Patrick King, Michael King, and others and the Davis Colliery Company, appeal.

*Affirmed and cause remanded.*

80 W. Va.

*W. B. & E. L. Maxwell* and *C. W. Maxwell,* for appellants.

*Harding & Harding, D. M. Hill Arnold* and *Fred O. Blue,* for appellees Michael King and William King.

*E. A. Bowers* and *Samuel V. Woods,* for appellee Davis Colliery Co.

POFFENBARGER, JUDGE:

The heirs of Patrick King complain on this appeal, of a decree denying relief sought by a bill in equity filed by their ancestor, Patrick King, to enjoin two actions of ejectment instituted by the Davis Colliery Company, one against C. B. Rhodes, tenant of Patrick, and the other against Michael and William King, claimants of the land as against the plaintiff in said actions and also against Patrick King; to enjoin an action of unlawful entry and detainer instituted by Michael King and William King against Patrick King; to enjoin other civil and criminal proceedings by Michael King against Patrick; and to obtain a decree quieting and establishing Patrick's alleged title. The decree complained of adjudged the title to be in Michael and William King. The Davis Colliery Company, having failed to obtain an adjudication of title in it, on its cross-bill filed in the cause, also complains of the decree.

The record discloses a very remarkable situation. Not one of all the claimants pretends to have a good and complete paper title. The land in controversy is a part of a 1,000 acre tract granted by the Commonwealth of Virginia to Micael Ryan, November 27, 1786, but none of the parties are able to connect themselves with that grant. In the year 1838, Augustine J. Smith obtained a deed covering this 1,000 acres, executed by George B. Wheeler, agent and attorney in fact for Robert B. Winlock, attorney in fact for certain parties claiming to be the heirs at law of George Adams, deceased. If Adams ever had any title to this tract, the nature and origin thereof are not disclosed. In the same year Fayette Johnson and wife executed to Benjamin F. Voss and Robert S. Voss, a deed for the same tract of land. Johnson claimed title under a deed from Frances Ryan, the widow

of Michael Ryan. It does not appear that Frances Ryan had more than a dower right in the land.

By a title bond executed September 27, 1856, Augustine J. Smith sold to Patrick King a portion of the 1,000 acre tract, estimated to contain 207¾ acres, King paying $50.00 of the purchase money and executing his three notes payable, respectively, in one, two and three years from date, for the balance. In the fall of 1856, he took possession of the land, cleared a portion thereof and built a small cabin on it. His possession was soon disturbed, however. On January 31, 1857, Benjamin F. Voss and Robert S. Voss brought their action of unlawful entry and detainer against him, but it was not finally disposed of until August 25, 1869, on account of the intervention of the war. On the date last mentioned, the Vosses recovered a judgment for the possession of the land, but that judgment was never executed.

Pending the suit, Patrick King leased or rented to Michael King, two acres of the land, stating the term and consideration as follows: ''For as long as he wants to live on it for the improvement to be mine when he leaves.'' Michael took possession of the two acres, built a house thereon, cleared it and later erected other buildings on it.

Two days after the rendition of the Voss judgment against him, as a claimant under Augustine J. Smith, Patrick King took a lease from E. H. O'Donnell, administrator and agent for the heirs of Augustine J. Smith, deceased, on 200 acres, more or less, for the term of one year commencing on that day, King agreeing to pay $1.00 for rent. In this lease, the land is described as that· claimed by Robert and Benjamin Voss. Less than one year afterwards, and before the expiration of the lease from O'Donnell, Patrick King leased the same land from Benjamin Voss, through his agent David Goff, until April 1, 1876, agreeing to pay $5.00 per annum as rent. Michael King was no party to this lease, but he signed it as a witness. At the same time, July 18, 1870, Michael rented from Benjamin Voss, through his agent David Goff, the house in which he then resided and the garden and about 100 acres of land west of the same and outside of the 207¾ acres, for five years, at one cent per annum as rent.

As further consideration, he agreed "To look after the land adjoining, belonging to said Voss, and give such attention as required to keep off trespassers." This lease was extended, April 24, 1877, for another period of five years, and enlarged so as to include two acres in front of the house. It was further extended and enlarged, July 18, 1886, so as to make it run for five years and to include the remaining land then owned by Benjamin F. Voss, estimated to contain 1,400 acres, with the exception of the part then occupied by Patrick King. This lease further provided an option of purchase for Michael King, of the 102 acres previously leased to him, at $5.00 an acre, and for cancellation thereof, at the will of B. F. Voss, as to the remaining land, the portion added by the lease.

Although Patrick King was in possession of the land as vendee of Augustine J. Smith, at the date of the recovery of the judgment against him by Voss, August 25, 1869, he took a lease from O'Donnell, administrator and agent of the heirs of Augustine J. Smith, for the same land, and, less than a year later, took a lease of it from Benjamin Voss. From July 18, 1870, he was occupying the land under both claims of title. After that date, Michael King seems to have consistently adhered to the Voss claim, but there is no subsequent act on the part of Patrick, indicating intention to rely upon it. He never renewed his lease from the Vosses, as Michael did.

Not long after he took that lease, the Smith title to the 1,000 acre tract, certain portions thereof excepted, was transferred to Samuel Woods, by a deed from the Smith heirs and C. J. P. Cresap, the latter having previously obtained an interest in the title. It is claimed the 207¾ acre tract is part of the land excepted from the operation of that deed. Nevertheless, Patrick King, who had never paid any portion of the notes executed by him to Smith for purchase money, took a new title bond for the land, from Woods, June 9, 1879, and executed his notes to Woods, for the aggregate sum of $783.80. At July Rules, 1896, Woods filed his bill in equity for specific performance of the contract, or enforcement of his implied vendors lien for purchase money, procured a de-

cree of sale, October 18, 1900, and a sale of the land thereunder, October 15, 1902, to the Junior Coal Co., of which the Davis Colliery Co. is the successor, and the sale was confirmed two days later.

At the time of the institution of the suit, however, Patrick King was not in possession of the land. He had been ousted therefrom by the Vosses, under a writ of possession awarded them on a judgment in an action of unlawful entry and detainer, rendered, May 12, 1891, which was executed by the sheriff, August 17, 1891. From July 18, 1870, until December 14, 1886, the Vosses had not disturbed him, presumably because he had not denied their title. On December 14, 1886, they brought an action of unlawful entry and detainer against him, because he refused to renew his lease, and obtained a judgment against him, which was reversed by this court, as will be seen by reference to *Voss* v. *King*, 33 W. Va. 236. On a second trial, they obtained another judgment which this court affirmed, as will be seen by reference to *Voss* v. *King*, 38 W. Va. 607. This is the judgment under which he was evicted.

Patrick King's ouster from the land continued until some time in the year 1906, when he again obtained possession thereof, through the treachery of a tenant of Michael King's, it is said, and a deed executed to him, on August 23, 1906, by the heirs of Augustine J. Smith, upon the theory that the land had been excepted from their deed to Woods and that the true title thereto still remained in them. In consideration of this conveyance, Patrick King agreed to pay them $1,469.69, of which sum he actually paid them, $1,076.00, December 29, 1906. Just before this deed was obtained and in the same month, August 2, 1906, the special commissioner in the chancery cause of *Woods* v. *King*, executed a deed to the Davis Colliery Co., pursuant to the sale of the land made to the Junior Coal Company, under the decree of sale in that cause. For some reason, this deed was not made until nearly four years after the date of the sale.

Patrick King, out of possession by virtue of the writ in the case of Voss against himself, from August 17, 1891, was admitted to possession again, in 1906, by a person on the land,

whom Michael King claims to have been his tenant. About the same time, he put C. B. Rhodes on the land as his tenant. About a year later, August, 1907, the Davis Colliery Company instituted its two actions of ejectment, Rhodes then being in possession, for and on behalf of Patrick King, and Michael and William King claiming the title.

During the period of Patrick King's enforced absence from the land, Michael King occupied it. Until October 18, 1897, he claims to have held it as the tenant of the Vosses. On that date, he and William King obtained a deed from the Vosses, conveying to them the entire 207¾ acres. Under that deed, they held possession, until the year 1906, when Patrick regained possession thereof, in the manner herein before indicated.

Patrick King based his claim to right of re-entry on the land, in October, 1906, not only upon the deed executed to him by the Smith heirs, but also upon the theory that Michael King who had originally entered upon the two acres, as his tenant, had continued to be his tenant throughout the period from August 17, 1891 to the date of the re-entry. After the eviction of Patrick King, Michael had taken possession of the house built on the land by Patrick and occupied by him until his eviction. At the date of the re-entry, the house was occupied by Mrs. R. C. Garrett, and Rhodes moved into the house with her. Patrick endeavored to have Mrs. Garrett recognize him as her landlord, and thereupon, Michael King and William King demanded possession of the house from her, and notified Rhodes to leave the premises and give them possession.

A fact that may have some bearing upon the relation subsisting between Michael King and Patrick King, has already been stated. After the first judgment against Patrick, in favor of the Vosses, he and Michael, on the same day, July 18, 1870, took leases from the Vosses, Patrick taking all of the tract now in controversy, except seven or eight acres, the part on which Michael King resided, and Michael taking the house in which he then resided, the garden and about 100 acres of land claimed by the Vosses, adjoining the 207¾ acre tract on the west. When they took them, each no doubt

was cognizant of what the other did. Certain it is, that Michael knew what Patrick had done, for he was a witness to Patrick's lease.

An action of ejectment brought by Samuel Woods vendee of the Smith title, against Michael King, at November Rules, 1891, in which the Voss heirs had themselves substituted as defendants, resulting in a judgment in favor of Woods, May 13, 1904, which was affirmed by this court, as will be seen by reference to *Woods* v. *King,* 59 W. Va. 418, did not include the lands now in controversy. The declaration, verdict and judgment excluded them. Why they were not included, does not clearly appear. On June 9, 1879, Woods sold this land to Patrick King, but Patrick was evicted and actually put off the land, August 17, 1891, some months before Woods instituted his action of ejectment. One contention urged by way of explanation is, that Woods knew he had no title to the land because it was excepted from the deed made to him by the Smith heirs, and another, that, although Patrick had been evicted, Michael, whom he regarded as Patrick's tenant, still remained on the land.

The deed from the Smith heirs to Samuel Woods conveyed, in general terms, the lands bargained and sold by the grantors, to C. J. P. Cresap, by a contract dated, August 21, 1874, and recites that by said contract, they had sold to Cresap, all of the land conveyed to and owned by Augustine J. Smith, in the counties of Randolph, Barbour or Upshur, and further describes them as follows: "Which remains unsold by the said Augustine J. Smith in his life time and by his heirs since his death as appears by the records aforesaid, remaining in either of said counties of Randolph, Barbour or Upshur, excepting only therefrom, in addition to what appears by said records, six small tracts of land sold respectively to George Mills, Patrick Rafferty, Patrick Knockton, Aquilla Osborne, Enoch Westfall, assignee of A. Wolf, and James Foye, and excepting also two other small tracts of land not to exceed in all 300 acres." It is claimed the land in controversy is one of the two other small tracts referred to in the deed, and, to sustain this contention, it is shown that Augustine J. Smith had previously sold 77 acres to Owen Riley and

the 207¾ acre tract to Patrick King.  O'Donnell, one of the
parties to the deed to Samuel Woods, testifies that he had
seen the two title bonds made by Smith to Riley and King,
shortly before he executed the deed.

Michael made an unavailing effort to obtain an adjudica-
tion on his claim of title, in the chancery cause in which
Woods procured a sale of Patrick's interest to satisfy his de-
mand for purchase money.  Though he was not a party to it,
he filed a petition therein, after the land had been actually
sold and on the very day of the confirmation of the sale,
praying to be made a party.  An order filing it on that date,
provided that the order entered on the previous day be set
aside and declared it thereby to be set aside, but it had not
been entered.  It had been endorsed for entry on the pre-
ceding day, but it was actually entered on the day on which
the petition was filed.  There was no further action on the
petition.

If Michael King's possession from 1891 until 1906, a period
of fifteen years, was not legally subordinate to the Smith title
and under it, by reason of his having entered upon the two
acres as tenant of Patrick King, vendee of Smith, and lack of
notice to the Smith heirs, or Samuel Woods, their grantee, of
his repudiation of their title, it was manifestly adverse, hos-
tile and sufficient in all respects to vest title in him, under the
statute of limitations.  When the sheriff evicted Patrick King,
in 1891, he put Michael in possession of the house and lands
as agent for the Vosses.  As such, he had absolute control and
possession of it, until he and William obtained their deed for
it in 1897.  He kept the Patrick King house occupied by ten-
ants and put up additional buildings on the Patrick King
part of the land.  Whether the possession from 1891 to 1897,
was that of the Vosses or of Michael King, it was open, no-
torious and exclusive.  Of this there can be no doubt.

As between Patrick and Michael it was, in point of fact,
as hostile as it was open and notorious.  In point of law,
it was equally hostile and adverse.  Patrick never leased more
than two acres of the Smith land to Michael, wherefore Mi-
chael's possession outside of the two acres so leased was not
legally under Patrick.  He never took that possession under

his lease. "A tenant is not estopped to deny his landlord's title to land not covered by his lease, nor to any greater interest therein than is necessary to support his lease, nor to land of which he has not taken possession under his lease." *Trust & Deposit Co.* v. *Paulhamus,* 74 W. Va. 1; *Pribble* v. *Stanley,* 74 W. Va. 75; *Davis* v. *Williams,* 89 Am. St. 55; *Johnson* v. *Shely,* 43 Cal. 299, 305; *State* v. *Boyce,* 109 N. C. 739; *Jochen* v. *Tibbells,* 50 Mich. 33.

Whether this rule would apply between Michael and the Smith's and Samuel Woods, except as to the two acres, we enter upon no inquiry, for he prevails against Samuel Woods upon another ground as to the entire tract, and also against Patrick.

There is no proof that Augustine J. Smith or his heirs had notice of Michael King's repudiation of their title and his tenancy under the Voss title, but it is perfectly apparent that Samuel Woods had notice of it, as early as October, 1891, for he then sued Michael King in ejectment for land he was holding under his lease from the Vosses, covering territory both within and outside of the 207¾ acre tract. He then resided on the land now in controversy, under a Voss lease extending beyond it. His own vendee of the land in controversy, Patrick King, who was still indebted to him for the purchase money, had just been evicted from the land and Michael had immediately taken possession of the whole thereof. When that action was commenced against their tenant, the Vosses promptly came to his rescue and had themselves substituted as defendants, designating themselves as his landlords, by an order entered January 30, 1892. It would be utterly preposterous to say he did not then know the status of Michal King as to all of the land. Moreover, he had been one of Patrick King's attorneys in the case in which Patrick was evicted. Patrick and Michael were both on the land when the Vosses instituted their action but they sued Patrick only and excepted from the verdict the land occupied by Michael. Both Michael and Patrick were witnesses in the case, testifying against each other and fully explaining the history of the controversy. Michael swore in that case that he had attorned to the Vosses, after the first

judgment against Patrick, in 1869, because he considered them the owners. He also said he had accepted a lease from. them. Patrick as well as Woods heard this testimony.

It is hardly necessary to cite authority for the proposition that a tenant's holding is adverse after he has made a positive disclaimer of his landlord's title and given him notice of the fact. This court reversed the first judgment in the second action by Voss against King, because the trial court refused to let Patrick King prove such disclaimer and notice to Goff, agent for Voss. Judge SNYDER, delivering the opinion of the court, said: "If the defendant shall be able .to. satisfy the jury that, more than three years before this action was commenced, he had disclaimed to hold under the Voss title, and that Voss or those claiming under him had notice of such disclaimer, then the right to bring this form of action was barred." *Voss* v. *King,* 33 W. Va. 236. On the same principle, Michael King's long possession after Samuel Woods' knowledge of his disclaimer to hold under the Smith title, vested title in him by adverse possession against Woods.

If the deed made by the Smiths to Woods did not convey the 207¾ acre tract and Michael's tenancy of the two acres, under them, was never terminated by a disclaimer made known to them, the notice to Patrick and to Woods would not be conclusive. Notwithstanding his leases from the Vosses, Michael would have to be regarded as still being tenant of the Smiths' and as having held the land for them to the extent of the two acres at the least. But these lands were not. excepted. By no words used in the excepting clause, can they be identified. It does not say the two small tracts had been sold nor that they were occupied by any person. There must be words in the deed by which the land granted or excepted can be identified, with the aid of extrinsic evidence. They cannot be supplied by such evidence. *Crookshanks* v.. *Ransbarger,* 80 W. Va. 21; *Freudenbarger Oil Co.* v. *Simmons,* 74 W. Va. 337.

The deed conveyed only unsold lands. and these had once been sold to Patrick King, but, after the Vosses obtained their first judgment against him, he took a lease of these lands:

from the Smiths and held them only as tenant thereafter. He never paid another dollar on the purchase money. From 1856 to 1874, a period of eighteen years, he had paid nothing. From 1869 to 1874, the date of the deed to Woods, he had held under a lease from the Smiths, and he repurchased the lands of Woods in 1879. Why did he pay nothing? Because the Vosses promptly sued him, upon his entry upon the lands. He knew the title was in question. Five years before the date of the deed to Woods, the Vosses prevailed over him, obtaining a judgment under which he could have been evicted and would have been, had he not agreed to hold under them. From all this, it is perfectly obvious that the sale made to him by the Smiths had been rescinded, or his purchase abandoned, and the lands treated, at the date of the deed to Woods, as unsold lands. All of the parties, the Smiths, Woods and Patrick King, interpreted the deed as having passed the title to Woods. For thirty-two years after their deed to Woods, nothing is heard of the Smiths. For fifty years, Patrick King had paid them nothing and they had demanded nothing from him, so far as this record discloses. He executed his notes to their ancestor in 1856, he took a lease from them in 1869, and they executed a deed to him in 1906, after having conveyed to Woods in 1874. Beyond this, nothing has been heard of them.

After having treated the indefinite terms of the deed as having passed the title to Woods, for so many years, none of these parties can be permitted now to give them a different interpretation. In such cases, contemporaneous or practical construction is conclusive upon the parties. *Ashbaugh* v. *C. & O. Ry. Co.*, 72 W. Va. 765; *Chapman* v. *Coal & Coke Co.*, 54 W. Va. 193; *Clark* v. *Sayers & Lambert*, 55 W. Va. 512; *Camden* v. *McCoy*, 48 W. Va. 377; *Caperton's Adm'r.* v. *Caperton's Heirs*, 36 W. Va. 479.

Although the land here in controvery was not involved in the ejectment action of *Woods* v. *King*, it is urged that the judgment in that case is an adjudication of Michael King's subserviency to the Smith title and for that reason, concludes him here. This position is manifestly untenable. Michael King may have been legally a tenant of Woods in 1891, the

date of the commencement of that action, for lack of notice of his disclaimer. He remained in possession of these lands, not involved in that action, long enough, after notice of disclaimer and after that suit was instituted, to vest title in him or the Vosses, by adverse possession. Woods knew, in 1891, or earlier, King had repudiated the Smith title and was claiming under the Voss title. Since that time, he had held these lands more than ten years. No matter whose tenant he had previously been. The judgment determining the previous character of his tenancy as to other lands, cannot conclude him as to these subsequently held for the statutory period.

King's heirs complain of the failure of the trial court to dispose of the several proceedings pending against their ancestor, at the date of the institution of this suit, in such manner as to settle finally all rights involved, including costs and damages. The decree dissolved the injunction granted on the bill, after deciding the question of title adversely to them, but it did not dismiss the bill. Of course, the injunctions were properly dissolved, for there was nothing upon which they could stand, after the question of title was disposed of. If the Kings are entitled to any relief as to costs and damages, the court below may still award it, wherefore the complaint is clearly untenable.

The Davis Colliery Company assigns error in the overruling of its demurrer to the bill, but submits no argument in support of the assignment. On its face, the bill showed perfect title and possession in the plaintiff and prayed cancellation of the Davis Colliery Company's deed as a cloud on his title. Only in a court of equity, can relief by way of removal of cloud from title be had, and the bill disclosed all the requisites of a status calling for such relief, particularly as against the Davis Colliery Company, wherefore its demurrer was properly overruled. In the further proceedings, the existence of these grounds of jurisdiction failed, but those proceedings brought into the cause prayers for cross-relief, based upon allegations of new matter, and Patrick King interposed no objection to the entertainment of the cross-bills. In other words, he made no motion for dismissal of his suit,

when the allegations of grounds of relief in his bill failed, nor did any of the defendants, in that state of the case, dismiss their crossbills, or ask leave to do so. As fully made up, the record discloses no issues of fact dependent upon conflicting evidence, necessitating a trial by jury. The issues are all purely legal and arise out of admitted and fully established facts, wherefore there is no insuperable obstacle to equity jurisdiction. *Ephraim Creek Coal Co.* v. *Bragg*, 75 W. Va. 70.

The decree complained of will be affirmed and the cause remanded for such relief on the bill as the appellants may be entitled to.

*Affirmed and cause remanded.*