# CHARLESTON.

GUSTAVUS J. CRESAP et als. v. NANNIE I. BROWN et als.

Submitted April 23, 1918.   Decided May 7, 1918.

1. TRUSTS—Death of Trustee—Rights and Liabilities of Heirs.

Land, the legal title to which is held by a person as trustee for himself and others, passes to his heirs or devisees, on his death, burdened with the trust in favor of the original beneficiaries and their heirs or devisees, and the persons so acquiring the legal title cannot rightfully sell, convey or otherwise dispose of the land or any part thereof, as against their co-owner. (p. 472).

2. SAME—Wrongful Sale by Trustee—Liability.

By a wrongful sale and conveyance thereof by the holders of the legal title, to a purchaser for value and without notice, the vendors incur liability to their co-owners in beneficial interest, for an amount sufficient to compensate them for the loss or injury so inflicted upon them. (p. 472).

3. SAME—Sale by Trustee—Legality.

In such case, the sale and conveyance of standing timber on the land, to a bona fide purchaser without notice, is a wrongful injury to the equitable estate for which compensation may be exacted from the vendors. (p. 472).

4. PARTITION—Settlement and Partition—Pleading.

In a suit for partition of land so held and from which standing timber has been legally so severed, such compensation may be adjudged and decreed under the prayer for general relief in a bill praying partition specially and, as broadened by amendment, alleging the wrongful conveyance and praying cancellation of the deed and an injunction against the cutting and removal of the timber; the right to such relief being an incident of the right to settlement of the trust and partition of the land. (p. 473).

5. SAME—Trust Estate—Compensation to Beneficiaries.

Such relief is neither inconsistent with the special prayers of the bill nor with denial of the validity of the sale and conveyance

and refusal to accept the proceeds of the sale or to enter into an accounting respecting the same, the compensation for the injury done and the proceeds of the sale being separate and distinct things in law. (p. 473).

6. TRUSTS—*Equitable Owners—Delay in Demand for Accounting.*

Delay in the demand for such an accounting, in such cause, for a period of time longer than that prescribed by the statute of limitations and until after an adjudication in favor of the purchaser and against the right of the vendors to make the sale, does not subject the claim to either the bar of the statute, its applicability being assumed but not decided, nor of the rule of laches, provided the suit was instituted within the statutory period, and under circumstances excluding the defense of laches, since the allegations of the bill and its prayer for general relief sufficiently asserted the claim. (p. 475).

7. SAME—*Trustee's Sale of Standing Timber—Damages to Equitable Owners—Measure.*

In the absence of proof to the contrary, the sale price of the timber, in such case, is sufficient proof of the extent of the injury inflicted upon the equitable estate of the co-owners, at the date of sale, and, if the accounting is subsequently made, such sum may be increased by the addition thereto of an amount equal to interest thereon at the legal rate, from the date of the sale until the date of the decree, the demand being pecuniary and contractual in character and definite and certain as to its amount and the date of its accrual. (p. 475).

8. SAME—*Accounting by Trustees—Tender.*

The right to an accounting on such basis is not defeated by a tender of a portion of the proceeds of sale, less in amount than the injured parties are entitled to demand, or a mere offer of compromise. (p. 475).

9. SAME—*Services of Beneficiaries—Charge.*

Persons standing in such relation are not entitled to charge one another with the value of their services, lay or professional, rendered in and about the care and management of the property and protection of the title, in the absence of an express agreement for compensation therefor; nor, when it has been the practice for each to render his own professional services, or employ separate counsel for such purpose, can one of them charge the others with fees he has paid to an attorney employed by him for such purpose, without the assent or request of the others, and put into service with their attorneys so employed and paid. (p. 475).

10. SAME—*Accounting—Expenses.*

The expenses of an audit and statement by an accountant, incurred by one of such parties without the request or assent of the others, based for the most part upon unfounded claims asserted by him in the judicial accounting, are properly rejected. (p. 480).

11. SAME—*Wrongful Acts of Trustees—Accounting—Proceeds.*

Though the basis of liability in such case is the duty to compensate for injury to the equitable estate, occasioned by the unauthorized sale of the timber, not indebtedness on account of the proceeds of the sale, the court, after having ascertained the amount of the liability and adjudicated it, may decree payment of portions of such proceeds to the parties entitled to compensation, by way of effectuation or execution of such adjudication, if such proceeds have been preserved and possession thereof by the parties held liable to make compensation, is admitted in the pleadings and proof. (p. 481).

12. INTEREST—*Judgment—Interest Pending Appeal—Payment Into Court.*

A defendant against whom a judgment or decree has been rendered, desiring further to contest and resist his liability by appellate procedure, is not entitled to be relieved of the burden of interest on the amount of the judgment or decree and responsibility for the fund, during the pendency of the appellate proceedings, by payment of the amount thereof to the general receiver or into court, and, under such circumstances, a refusal of leave to pay it to the general receiver is proper, but a grant of leave to pay it into court is erroneous. (p. 481).

13. PARTITION—*Costs—Apportionment.*

Ordinarily, the costs in a suit for partition are apportionable among the parties on the basis of the relative interests in the land, and the decree therefor is withheld until the partition has been completed; but, if expensive issues are raised respecting the basis of division or an accounting, the separable costs of the trial of such issues may be adjudged to the parties substantially prevailing thereon, at the termination thereof and before effectuation of the partition. ('p. 480).

14. PREFERENCE—*Allowance in Part.*

On an objection to the allowance of a master commissioner's claim for fees and services rendered in the execution of an order of reference for an accounting, on the ground of excessiveness, the trial court may properly allow such portion thereof as the commissioner is manifestly entitled to and reserve its judgment as to the residue of the claim. (p. 480).

Appeal from Circuit Court, Randolph County.

Bill by Gustavus J. Cresap and others against Nannie I. Brown and others. From the decree, defendants J. Hop Woods and others appeal.

*Reversed in part. Affirmed in part. Remanded.*

*J. Hop Woods* and *Samuel V. Woods,* for appellants.

*W. B. Maxwell, W. W. Brannon,* and *W. E. Baker,* for appellees.

POFFENBARGER, PRESIDENT:

After the remand of this cause, in pursuance of the decision reported in 69 W. Va. 658, to which reference is made for indication of the relations of the parties, character of the litigation and general nature of the controversy, the personal representatives and devisees of Samuel Woods, deceased, and the devisees of Frank Woods, deceased, moved the court for leave to withdraw their offer of an accounting, made in their answer previously filed, and then filed a plea of the statute of limitations, to which the devisees of John Brannon replied generally. Overruling the motion to withdraw the offer of an accounting and granting the devisees of John Brannon leave to file a special replication to said plea, within thirty days, the court referred the cause to a commissioner to take, state and report an account. The commissioner filed his report, May 7, 1915, and two subsequent reports, termed in the decree "forthwith reports," May 24, 1915 and March 5, 1917, respectively. There were numerous exceptions by both sides to the original report and some were filed to those subsequently made. In the decree appealed from, the court overruled all of the exceptions other than one pertaining to the costs of the reference, provisionally eliminated from the account an item of $1,627.60, the rights respecting which were dependent upon the result of pending litigation in another cause, and adjudged, ordered and decreed that J. Hop Woods and Samuel V. Woods, as administrators with the will annexed of Samuel Woods, deceased, retain out of the sum of $59,-937.94, the sum of $25,786.09, embracing the distributive share of the Woods estate, $17,897.31, advances made by it

for the benefit of the joint property, $3,214.64, the amount due the Woods estate from the distributees of C. J. P. Cresap, deceased, $796.12, and $702.67, and advancements made by said estate to Nannie I. Brown Holt, amounting to $3,175.35; and pay to the administrator *de bonis non* of John Brannon, deceased, out of said sum of $59,937.94, the sum of $21,152.22, to Gustavus J. Cresap in his own right and as administrator, $8,087.99 and to Nannie I. Brown Holt $4,912.62. From this decree, the personal representatives of the estate of Samuel Woods, deceased, have appealed.

For an alleged lack of pleading, not jurisdiction in equity in a partition suit, the appellants deny the right of the appellees to an accounting at all, and especially as to the proceeds of the timber sold to Moore and Keppel, constituting the bulk of the funds distributed. The original bill was filed against the Woodses and Brannons and prayed specially only for partition, but it contained a prayer for general relief. The amended bill brought in Moore and Keppel, attacked the sale made to them, for lack of authority in J. Hop Woods and Samuel V. Woods, acting for themselves and their codevisees, and, repeating the prayers for partition and general relief, specifically asked annullment of the deed. In an amended and supplemental bill, all of these prayers were repeated in connection with one for certain injunctions against the cutting of timber and construction of railroads. There is another repetition of several of them in a second amended and supplemental bill having for its special purpose the stay of a decree of sale made in another suit. The defendant having averred, in answers previously filed, their offer to pay the estates of John Brannon and C .J. P. Cresap $5,870.-84, each, out of the proceeds of the sale of the timber to Moore and Keppel, and prayed for an accounting, by way of affirmative relief, the plaintiffs filed in the clerk's office of the court, September 30, 1905, a special reply in writing, denying the right in the defendants to an accounting on the basis stated by them and admitting rejection of the offer of payment made. They also filed in said clerk's office, October 10, 1905, another special reply in writing by which they united in the prayer of the defendants for an accounting as to all

monies arising from the proceeds of the lands sold by Samuel
Woods in his lifetime and before the death of C. J. P. Cresap,
but expressly declined to enter into an accounting as to the
proceeds of sales made by him after the death of Cresap, or
by his heirs or devisees, since his death, and expressly re-
pudiated all such sales.  These special replications were for-
mally filed by the decree of reference, entered after the re-
mand of the cause, and described therein as having been
theretofore read.

The substantial purpose of the original bill was the enforce-
ment and settlement of a trust.  Three estates were equally
interested, beneficially, in the land, the legal title to which
was held by the devisees of Samuel and Frank Woods, equit-
able owners of one-third thereof, as well as trustees.  It
prayed only for partition and general relief.  On such a bill,
compensation could be allowed for injuries done to the trust
subject by acts done by the trustees in excess of their author-
ity, if facts justifying it were alleged and proved, for al-
lowance thereof would not be inconsistent with the relief
specially asked, and would be founded upon the case made
by the bill.  Certainly, the rule here would not be more rigid
than that governing procedure on a bill for partition among
tenants in common, allowing an accounting on a bill praying
partition and general relief, as an incident of the right to
partition, a doctrine uniformly assented to by the authori-
ties.  *Rust* v. *Rust,* 17 W. Va. 901, 907; *Humphrey* v. *Foster,*
13 Gratt. 653; *Watts* v. *Waddles,* 6 Pet. (U. S.) 359; *War-
field* v. *Bank,* 11 Gill & J. (Md.) 98; *Backler* v. *Farrow,* 2
Hill's Ch. (S. C.) 111; Freeman Coten. & Part. sec. 512; 21 A.
& E. Ency. L. 1170; 30 Cyc. 231; Fletcher's Eq. Pl. & Pr.,
sec. 41; Mitford's Pl. 38, 39; 1 Beach. Eq. Pr. 132.  The orig-
inal bill did not allege facts showing such injuries or an abuse
of the trust, but the later pleadings did bring in the sale of
the timber, without authority, under such circumstances as
wrought deprivation of the title thereto.  This circumstance,
however established, whether regularly or irregularly as a
matter of pleading, afforded an ample basis for a demand
for an accounting under the prayer for general relief, since
substance rather than form governs the right.  The allega-

tion of a wrongful sale was maintained, notwithstanding denial of the prayer for specific relief based thereon, annulment of the sale as against Moore and Keppel. Under a general prayer, a plaintiff cannot have a decree founded upon a claim distinct from that stated in his bill. *Piercy* v. *Beckett,* 15 W. Va. 444; *Pickens* v. *Knisely,* 29 W. Va. 1; *Zell Guano Co.* v. *Heatherly,* 38 W. Va. 409; *Vance Shoe Co.* v. *Haught,* 41 W. Va. 275; *Stewart* v. *Tennant,* 52 W. Va. 559. And the relief given under such prayer, when special relief is asked, must not be inconsistent with that specifically sought. *Vance Shoe Co.* v. *Haught,* cited. The assumption of legal inconsistency between the award of an accounting and the special prayers of the amended bill and the amended supplemental bills, proceeds upon the erroneous theory of a ratification of the sale of the timber and the pursuit of the proceeds thereof in the accounting. The disavowal and repudiation of the sale and declination to accept the proceeds are inconsistent with a decree for partition of the proceeds, but there was a right in the plaintiff to an accounting for the injury done to the trust subject, by the wrongful sale of the timber, and the absolute consistency of that right with the special prayer for partition is perfectly obvious. The acceptance of the sale price of the timber as the measure of the compensation for the wrong done amounts to nothing more than the assent of the appellees to a rule or standard of measuring the compensation. Whether the timber was worth more or less than the sale price does not seem to have been made an issue in the accounting. The appellees seem to have been willing to accept it, with interest, as the measure of their compensation for the injury and the appellants seem to have acquiesced in that standard of measurement, except as to the interest, if held liable at all, for there was no contention on their part that the amount of compensation should be determined upon another basis. Of course, they deny any liability at all, upon technical grounds, and object to the allowance of interest, but the inquiry now goes to the question of liability upon any basis. Though not so expressed in terms, the view now adopted states the principle upon which the court seems to have predicated its general conclusion on the former appeal.

It was then held that the appellants had made the sale, without authority, and that Moore and Keppel were protected in their purchase, only by lack of notice of the defect in the title of their vendors. There was no adjudication of a ratification of the unauthorized sale or acceptance of the proceeds thereof. The Woodses were absolved from the charge of intentional wrong and the price at which they had sold commended for fairness and reasonableness, but they were held to have acted without authority and to be, for that reason, wrongdoers in their capacities as trustees, though not so characterized in terms. So to characterize them now casts upon them no imputation of moral turpitude, for a man may invade the rights of another, without the slightest intention to do anything improper or illegal. Upon the pleadings and clearly established facts, as the cause stood, when in this court on the former appeal, there was ample ground for the award of the right to an accounting in the appellees, for the breach of the trust. Any inaccuracy of the statement as to the standard of measurement of the compensation, found in the opinion delivered, cannot be invoked against the positive and clear award of the right.

The declaration in the opinion delivered on the former appeal in this cause, of a right of accounting in the appellees, founded upon sufficient pleadings and proof, and the remand of the cause for further proceedings in accordance with the principles and conclusions stated in the opinion filed, amounted to an adjudication of that right. *Butler* v. *Thompson,* 62 W. Va. 311; *Koonce* v. *Doolittle,* 48 W. Va. 592. The syllabus based upon the opinion delivered on the former hearing is not altogether silent as to the right of accounting, but if it were, its silence would not prove lack of an adjudication. Many of our decisions attest the efficacy of principles and conclusions stated in the body of the opinion and not referred to in the syllabus. *Hall & Smith* v. *Bank of Virginia,* 15 W. Va. 323; *Henry* v. *Davis,* 13 W. Va. 230; *Horner* v. *Amick,* 64 W. Va. 172. This adjudication as well as the allegations and proof afforded ample justification for the overruling of the motion of the appellants to withdraw their offer of an accounting.

Since this suit was brought for an accounting as well as for partition, the statute of limitations, if applicable at all, would not bar any item later in date than January 28, 1898, the suit having been brought exactly five years after that date, January 28, 1903. On June 6, 1898, the balance due from the Woods estate, as ascertained by the commissioner, was $141.73. Neither in any assignment of error nor in any argument submitted, is there an indication of any reason why this particular item or amount is barred. How it could be barred is not perceived, since, after that date, both John Brannon and Mrs. Cresap, advanced money with which to pay taxes on the land. It would be equitable and just to apply that balance on taxes subsequently accruing and, in the absence of any agreement to the contrary, the law would no doubt so apply it. All of the other items are charged either within five years next preceding the date of the institution of the suit or in the period of its pendency. For the application of the statute of limitations to the large amount involved, the compensation for injury predicated on the sale of the timber, the argument submitted is based upon the assumption of non-assertion of any claim to the proceeds of sale, until after the former decision by this court, sustained by lack of a special prayer therefor in the bills, declination to enter into an accounting as to the proceeds of the sale of the timber and of any land sold since the death of C. J. P. Cresap, evidenced by the special replication filed in the clerk's office, October 10, 1905, absence of the replication from the record at the date of the entry of the decree formerly appealed from, and the attempted withdrawal of the offer of an accounting made by the appellants in their answer. The theory thus fully proved does not disprove another and different one upon which the right of the appellees stands. The refusal to enter into an accounting as to the proceeds of lands and timber wrongfully sold is not at all inconsistent with the assertion of the right to compensation for wrongful injury to the trust subject, and the suit was brought in ample time to save that, if the statute would apply, in the case of failure to sue within five years from the commission of such injury. In other words, the statute might confer immunity from liability for the pro-

ceeds *eo nomine,* which the appellees have never sought, but not from liability to an accounting for injury to their estate, which they have sought to enforce.

There is no denial in argument or otherwise, that the sale price of the timber is substantial and convincing evidence of its value and, therefore, of the extent of the injury done to the trust subject, at the date of the sale. The propriety of its allowance as an element of compensation is manifest, but that of the addition of interest on such sum, as another element, regarded as a legal proposition, is not so apparent. But for the sale, the timber would have been enhanced in value by the·growth of several years and a general appreciation in timber values due to the gradual depletion of the forests, enlargement of the market and provision or prospect of nearer and better transportation facilities. Upon its judicial knowledge, therefore, the trial court was amply justified in the conclusion that the equivalent of the purchase money was not alone a full and just recompense. His allowance of interest, as the measure of additional compensation, is not open to the criticism that it is an addition to an amount recoverable as damages for injuries resulting from a merely tortious act, founded upon the law and wholly unconnected with a contractual obligation. The Woods devisees took the legal title in trust and their unauthorized sale of the timber was a breach of a contract of the most sacred and solemn character, however obscure the invaded right of the beneficiaries of the trust may have been. In the absence of a statutory provision therefor, interest is never allowed as part of the damages for a mere tort, such as a personal injury, assault and battery, slander, libel, seduction, false imprisonment or simple negligence. 8 R. C. L. 536. In some states, the jury is permitted to increase the damages by an amount equal to interest, in cases involving the destruction of property by wrongful acts, using the value of the property as the basis of the calculation. *Jacksonville etc. R. Co.* v. *Peninsular Land etc. Co.* 27 Fla. 157; *Central of Gerogia R. Co.* v. *Hall,* 124 Ga. 322; *Louisville etc. Co.* v. *Wallace,* 91 Tenn. 35; *Ainsworth* v. *Lakin,* 180 Mass. 397. But the owner of personal property, suing for damages in trover or trespass

*de bonis asportatis,* is generally held to be entitled to recover
the equivalent of interest calculated on the value thereof, as
damages.  8 R. C. L. pp. 537 & 538, citing numerous cases,
including *Page* v. *Fowler,* 39 Cal. 412; *Parks* v. *Sullivan,* 46
Colo. 340; *Sturges* v. *Keith,* 57 Ill. 451; *Churchill* v. *Watson,*
5 Day (Conn.) 140; *Beals* v. *Guernsey,* 8 Johns. (N. Y.)
446; and *Lewis* v. *Roundtree,* 79 N. C. 122.  An authority
binding on us allows interest on the value of property wrong-
fully sold by a sheriff, under an execution, in an action on an
indemnifying bond.  *Crump* v. *Ficklin,* 1 Pat. & H. 201.
Between these cases and the situation presented here, a very
strong analogy obtains.  The unauthorized sale disposed of
the very substance of the land and also deprived the bene-
ficial owners of the power to convert the timber into money
themselves and obtain the title and use thereof.  An injury
to the inheritance, as of the date of the sale, to the extent of
the value of the timber, was a direct and inevitable result
thereof.  Compensation as of that date would have involved
payment then, of an amount equal to the value of the timber.
Later payment of a like amount could not fully compensate,
for it would leave out deprivation of the benefit of the growth
of the timber or the use of the money representing its value.
The modern rule in some jurisdictions sanctions the allowance
of an addition to the damages actually found, equal to inter-
est thereon, in actions for breaches of contract, when a clear,
firm and certain basis for right of recovery of a certain sum
at a definite time is established, whether the contract be for
the payment of money or performance of some other act.
*Laycock* v. *Parker,* 103 Wis. 161; *Mansfield* v. *N. Y. C. & H.
R. R. Co.,* 114 N. Y. 331; *Spalding* v. *Mason,* 161 U. S., 375;
Sutherland, Damages, 4th Ed. secs. 320, 321.  Here there is a
certain definite, pecuniary, minimum basis, the sum of money
received for the timber, as of a date equally certain, and it
is apparent that, without an allowance of an amount equal
to the interest on said sum from the date of the payment
thereof, the appellees cannot be fully compensated for the
injury inflicted upon them and their estate.  Equity and good
conscience, as well as the legal principle of compensation, re-
quire it, wherefore the court properly added to the value of

the timber, as fixed by the sale price, a sum equal to the interest thereon, as an element of the compensation recoverable.

Failure of the appellants to keep the fund arising from the sale so invested as to make it earn for them the full value of its use, as indicated by the legal rate of interest, cannot consistently be allowed to abate the right of the appellees as here defined or detract therefrom. Their sale was unauthorized and never ratified, wherefore they were not, as to said fund, the trustees or agents of the appellees, holding money for them subject to their demand of payment. Nor was there a tender at any time sufficient to absolve them from liability for interest. The offer of payment, made soon after the sale, was much less, exclusive of interest, than the appellees were entitled to, in the opinion of the commissioner and the court below. There was a futile effort to compromise and settle with the Brannon estate in 1907, on the basis of $9,000.00 or less, a sum far below the amount due. In both instances, the interests of the appellees were charged with large amounts for commissions, attorneys fees and expenses, asserted in this cause and rejected by the commissioner and trial court. To relieve from damages determinable by the standard of legal interest, as to the sums tendered, they should have been paid direct to the parties entitled, or into court for them, in partial discharge of the liability, so they could have been accepted without a waiver of right to demand more. To stop interest, the full amount due must be tendered and the tender must be kept good. *Shank* v. *Groff*, 45 W. Va. 543; *Lohman* v. *Crouch*, 19 Gratt. 331. To say the appellees are estopped to claim interest, if mere interest were involved, by their failure to require the money to be paid into court, would be inconsistent with this rule. The call of duty was to the appellants, not to the appellees.

The limited powers of the appellants and their ancestor as trustees and the agreement between the latter and his associates, interpreted in the light of their transactions respecting the lands, warranted disallowance of the large claims asserted for services as attorneys and otherwise. Settlements made between Judge WOODS and Judge BRANNON disclose no

charges for services by any of them. They were both living as late as 1897 and had been associated in the ownership of these lands, since 1874. There had been considerable litigation over the title to some portions of them, if not all, calling for much labor, expense and care. Their settlements disclose apportionment of the expenses, but no charges for services. In most, if not all, of the litigation occurring or continued after the death of Judge Woods, the parties were represented by counsel selected by themselves, respectively, the Woods interests by Samuel V. Woods and J. Hop Woods, Judge BRANNON by himself as long as he was able to work, and then by attorneys of his estate, and the Cresaps by attorneys selected and paid by them. Of course, the relation of the parties did not preclude the right of employment by one another as counsel, or agents or otherwise, but there is no evidence of any agreement to pay one another for services of any kind. Substantially and practically, though perhaps not technically, they were and are tenants in common, between whom there can be no recovery or allowance for services, in the absence of a special agreement for compensation. Freeman, Coten. & Part. sec. 260. The relation is strikingly analogous to that of partnership as well as co-tenancy, neither of which allows compensation for services of any kind, in the absence of an agreement. This excludes the claims of Samuel V. and J. Hop Woods for services as well as that asserted for services by Judge Woods in his lifetime. Upon the same principle, the rejection of the large fee paid by the Woodses to C. Wood Dailey, for professional services in the litigation between Judge Woods and the Vosses, over the title to a portion of the land, was proper. All of the interests adverse to the Vosses were represented by counsel separately employed and nobody other than the Woodses employed Mr. Dailey. One exception overruled pertains to the disallowance of numerous items amounting in the aggregate to $3,616.42, some of which were attorneys fees, the rejection of which has already been approved. These cover more than $2,700.00 of the aggregate sum. Three others amounting to more than $300.00 are excluded by the testimony of Samuel V. Woods. Others amounting to about

$300.00 represent the expenses of an audit the appellants caused to be made, in the absence of any request therefor or assent thereto by the appellees. Both the court and commissioner seem to have been of the opinion that it was made in the interest of the appellants rather than that of all the parties. Much of the services of the accountant pertained to the claims for services and attorneys fees not properly chargeable against the appellees. Three items amounting to more than $100.00 are for traveling expenses of Samuel V. Woods in connection with this suit on the former appeal. No error in the disallowance of any of these claims is perceived and nothing in the assignments of error or the arguments suggests any ground or principle upon which any of them can be allowed. Others amounting to a little over $80.00 seem to be costs paid in the case of *Patrick King* v. *Michael King et al.*, which, at the dates of the report and decree, was still pending. The disallowance of these items may have been provisional for that reason. No ground for the allowance of other small items rejected is shown.

An item of $1,627.60 received on account of a judicial sale of the King land, as a conditional payment, and charged against the appellants by the commissioner, was provisionally eliminated by the court, on account of the pendency of the suit out of which the payment arose. Refusal or failure of the court to eliminate it entirely, as being an asset of the Woods estate exclusively, is the ground of an assignment of error. The origin of that fund, as disclosed in the opinion delivered in *King* v. *King*, 92 S. E. 657, 659, accordant with the proof here, fully justifies the action of the court in retaining its hold upon it for the time being.

The costs of the reference were properly decreed against the appellants. Their assertion of large unfounded claims against their co-owners, for services and attorneys fees, amounting to about $20,000.00, their refusal to settle without large allowances of that kind to them and their total denial of liability to account for anything, founded upon the statute of limitations and technical grounds pertaining to procedure constituted the occasion and necessity of the reference. Their exception to the costs or fees claimed by the commissioner, on

the ground of excessiveness, was respected and preserved, by a provisional allowance of $300.00, which, in view of the immensity of the record made, is clearly justifiable. The question of a further allowance or adjudication in his favor, as to the amount, has been reserved by the trial court, for a future order. As the costs of the reference are clearly separable from those of the partition, a separate decree therefor is proper and it need not await the final decree, effectuation and confirmation of partition. The decree also carries all costs incurred to the date of the entry thereof. The right of partition was never denied, but the basis thereof was unsuccessfully put in issue by the appellants, as the former decision shows, and this circumstance justifies the award of costs generally, so far as they have been made. Ordinarily the costs in a partition suit are apportioned among the owners on the basis of their relative interests, but, when a special issue as to title or the basis of the division arises, entailing expensive litigation, the rule is necessarily varied.

In so far as it goes against the fund in the hands of Samuel V. Woods and J. Hop Woods, as administrators with the will annexed of Samuel Woods, deceased, derived from the sale of the timber after having determined the liability of the appellants and adjudicated the same and the amount thereof, it may be treated and considered as a decree in the nature of an execution or by way of execution or enforcement of the liability. In other words, while the primary object of the accounting was not acquisition of that fund, it may be taken and applied in satisfaction *pro tanto* of the amount decreed, because its possession, preservation and availability are admitted.

The refusal of the court to permit the fund to be paid to its general receiver instead of the clerk, is made a ground of error. There was no right in the appellants to put the money in the hands of either the court or its general receiver. The purpose of the proposed procedure was relief from the burden of interest, during the period of further litigation by an appeal. To stop interest, a tender or payment must be absolute and unconditional. While the party in whose hands the money is, contends for his right of retention and non-

liability, he must bear the responsibility of its custody. The opposite party cannot be forced to accept a conditional payment either to himself or into court. He is entitled to have the money for his own use in his own way, or to hold the adverse claimant responsible for it and the value of its use. In other words, if the debtor is unwilling to relinquish his claim or abandon his defense, and make an absolute and unconditional payment, he must keep the money and remain liable for interest thereon, unless the creditor assents to a different course of procedure. *Blanton* v. *Heckscher,* 101 Va. 42; *Farmer* v. *Yates,* 23 Gratt. 145; *Davis* v. *Chapman,* 83 Va. 67. Whether the plaintiff would be bound to accept an unconditional partial payment does not arise on this record. There was no error in the refusal of leave to pay the money to the general receiver, but there was error in the granting of leave to pay it to the clerk of the court, wherefore the cross-assignment of error must be sustained.

For the reasons stated, the decree will be reversed in so far as it granted leave to the appellants to pay the amounts adjudicated against them to the clerk of the court below, and affirmed in all other respects.

*Reversed in part. Affirmed in part. Remanded.*