𝔖𝔱𝔞𝔲𝔫𝔱𝔬𝔫.

VIRGINIA LAND IMMIGRATION BUREAU AND OTHERS
v. PERROW.

September 11, 1916.

Absent, Whittle, J.

1. VERDICTS—*Evidence to Support.*—The verdict of a jury will not be set aside as contrary to the evidence, if, when the record is viewed as a whole, there appears to be evidence to support the verdict.

2. PLEADING—*Joinder—Debt and Detinue—Nature of Recovery.*—While debt and detinue may be joined in the same action, a plaintiff cannot sue in detinue and recover in debt.

3. DETINUE—*Gist of Action.*—The gist of an action of detinue is the unlawful detainer of the specific property sued for—not any other property, and not a money obligation due from the defendant to the plaintiff.

4. INSTRUCTIONS—*Conflict—Misleading Jury.*—Where an erroneous instruction was given for the plaintiff, but the law was correctly stated in an instruction given for the defendant, and the evidence was not such as to warrant the court in saying that no other verdict could have been properly found, a verdict for the plaintiff should be set aside. The erroneous instruction for the plaintiff not only tended to, but probably did, mislead the jury.

Error to a judgment of the Law and Chancery Court of the city of Roanoke, in an action of detinue. Judgment for the plaintiff. Defendants assign error.

*Reversed.*

The opinion states the case.

*Johnston & Izard,* for the plaintiffs in error.

*Kime, Fox & McNulty,* for the defendant in error.

Kelly, J., delivered the opinion of the court.

This is a contest between two real estate agents over the commissions or profits on a sale of land.

H. J. Perrow had a written contract with Miss Mary A. Reynolds (now Mrs. Saffle) and her sister, Miss Rosa A. Reynolds, both of the State of Arkansas, whereby he was appointed their agent to find a purchaser for their farm in Bedford county, Va. This contract provided that the farm should be sold for $6,000, that the Misses Reynolds should pay, and Perrow should accept, the sum of $200 in full settlement for all claims against them on account of his agency under said contract. In his testimony in this cause, he said that he had been their agent and representative for several years, had received no compensation for looking after their property, and was to have all the proceeds of sale in excess of $6,000.

Subsequently, Perrow interested the Virginia Land Immigration Bureau, a real estate corporation, in the sale of this farm, and entered into a written contract with the Bureau concerning the same. The contract fixed the selling price at $10,000, and as to this there is no dispute; but the copy of the contract in evidence shows that Perrow agreed to pay the Bureau "all over $8,000.00" as commission if it succeeded in securing a purchaser; and as to this latter feature of the contract Perrow claims, and the Bureau strenuously denies, that, as originally prepared and executed, it only provided that the Bureau should be paid "ten *per cent.* commission," and that the contract had been subsequently changed without his knowledge or authority.

There are other sharp and irreconcilable conflicts between the testimony of Perrow and W. J. Quick, the latter of whom acted exclusively for the Bureau.

We deem it unnecessary to go into any detail as to these conflicts in the evidence.

The Bureau succeeded in interesting one I. R. Longsworth in an effort to sell the farm, and through him, after somewhat prolonged negotiations, all of which were made with the knowledge of Perrow, a sale of the farm was finally perfected to P. M. Edson, trustee, at the price of $10,000.00. Perrow knew that Longsworth would require the Bureau to divide with him such commissions as it might receive. The total sum of $10,000.00 was distributed as follows: $6,100 paid or payable in money and notes in a manner which was satisfactory to the vendors; $1,900 in purchase money notes payable to the vendors and delivered to Perrow (the Bureau having previously advanced him $100); $1,200 in cash and two notes of $400 each, payable to the vendors, this last-named sum in cash being equally divided between Longsworth and the Bureau, and the two last-named notes being delivered, one to Longsworth and the other to the Bureau. When this distribution of the total purchase money was agreed upon, Perrow executed the following receipt, dated June 26, 1911:

"Received of Mary Reynolds Saffle and Rosa A. Reynolds five notes of P. M. Edson, dated March 1, 1911, aggregating $1,900 and due on or before four (4) years after date and secured by mortgage on the Chas. B. Reynolds plantation in Bedford county, Virginia, the same being in full for all services, claims and matters of every kind and description and a complete and full settlement between us."

It is clear from the correspondence filed in evidence, and from the testimony of Quick and Longsworth and Perrow himself, that the latter was thoroughly conversant with the above-mentioned distribution of the

53

proceeds of the sale. He, however, testifies further that he protested at the time, and has thereafter continued to protest, against any division of the proceeds which would give Longsworth and the Bureau more than the joint amount of $1,000, being ten *per cent.* upon the sale.

More than three years after the sale was concluded, Perrow brought this action, which is an action of detinue, to recover three of the purchase money notes which were executed at that time, two for the sum of $400 each, and one for the sum of $300. At the trial he admitted that the $300 note sued for was one of the notes mentioned in his receipt of June 26, 1911, above quoted, and which he had already received and appropriated to his own use. When asked what claim he had to the two $400 notes mentioned in his declaration he replied that he did not know how the notes were divided but "that they were still due him $1,000."

If his contention eventually prevails, it appears that his principals will have received $6,100, he will have received $3,000, Longsworth $1,000, and the Bureau nothing. It is not clear how, if at all, the Bureau was reimbursed for the $100 advanced to Perrow, but as no complaint is made in reference thereto, it may be assumed that this was done. The jury found a verdict for the plaintiff which, in its final and amended form, declared that the defendant was unlawfully detaining two $400 notes, and fixed the alternate value thereof at $800, and thereupon the court rendered the judgment which is before us on this writ of error.

It is earnestly insisted that the effect of the receipt given by Perrow on June 26, 1911, is such as to preclude any claim of title on his part to any part of the proceeds of sale over and above the $1,900 mentioned therein, and that his claim for more is not only without

any title to support it, but is an act of bad faith towards his principals. In view of his testimony, however, we think the jury might have found that his principals understood that his receipt was merely a settlement with them; that they knew and acquiesced in the fact that there was still another $2,000 to be divided among the agents, and that by his agreement with the Bureau he was to have the still further sum of $1,000, of which the two $400 notes sued for formed a part, thus giving him $3,000 as his compensation for the sale and leaving only $1,000 for the parties who had really made the sale, the Bureau and Longsworth. This latter proposition may not invite belief, but it is one which the jury may have been inclined to accept because of the fact that there is in the record a letter from Quick to Perrow containing a highly reprehensible suggestion as to how these two agents should conspire to mislead Longsworth regarding the actual amount which would be the subject of division among all three of the agents. Without discussing the evidence at length, we are constrained to reject the contention that it was not, when viewed as a whole, sufficient to take the case to the jury.

In our opinion, however, the italicized words in the following instruction for plaintiff rendered the same misleading and erroneous:

"The court instructs the jury that in order to maintain this action of detinue, the plaintiff in this case must prove that he has a property right in the notes sought to be recovered; that he has an immediate right to the possession of the notes as described in his declaration, *or such notes as represent the amount of money sued for*, and that the defendant now has possession of said notes, or did have possession of them at some time prior to the institution of this suit."

It is said to be one of the anomalies of our system of pleading that debt and detinue may be joined in the same action (4 Minor's Inst. 447-8), but it has never been held that a plaintiff can sue in detinue and recover in debt.

The gist of an action of detinue is unlawful detainer of the specific property sued for—not any other property, and not a money obligation due from the defendant to the plaintiff. The effect of the instruction complained of as it seems to us, was to convert an action of detinue into one of debt or assumpsit. It is true that defendant's instructions correctly informed the jury as to the proof necessary to recover in detinue; but the instruction in question was in conflict therewith, and not only tended to, but probably did, mislead the jury. Their verdict, as first returned, was, "We, the jury, find a verdict for the plaintiff in the sum of $800.00," which was subsequently amended so as to make it describe the two $400.00 notes and conform to the requisites of a verdict in an action of detinue.

The evidence was by no means such as to warrant us in saying that no other verdict could have properly been found; nor can we say that the error in the instruction was harmless, We are, therefore, of opinion that the judgment must be reversed, the verdict of the jury set aside and the cause remanded for a new trial.

*Reversed.*