CITY OF PASSAIC, A MUNICIPAL CORPORATION, PLAINTIFF-APPELLANT, v. CITY OF CLIFTON, A MUNICIPAL CORPORATION, PASSAIC COUNTY BOARD OF TAXATION, AND DIVISION OF TAX APPEALS, DEPARTMENT OF THE TREASURY, DEFENDANTS-RESPONDENTS.

Superior Court of New Jersey
Appellate Division

Argued October 14, 1952—Decided December 1, 1952.

334

Before Judges JAYNE, PROCTOR and SCHETTINO.

*Mr. William N. Gurtman* argued the cause for plaintiff-appellant.

*Mr. John G. Dluhy* argued the cause for defendants-respondents (*Mr. Mervyn R. Montgomery,* on the brief).

The opinion of the court was delivered by

SCHETTINO, J. S. C. The question presented is whether the City of Passaic or the City of Clifton is entitled to receive a portion of the taxes levied for the year 1951 upon the shares of common stock of Passaic-Clifton National Bank and Trust Company, a national banking association. At all times herein mentioned the bank operated banking facilities in both municipalities.

The bank was formed in 1949 through the merger of two national banks, one located in Passaic and the other in Clifton. The location of the new bank was declared to be in Passaic under the provisions of 12 *U. S. C., section 22* which provides that the "organization certificate * * * shall specifically state: * * * The place where its operations of discount and deposit are to be carried on, designating the State, Territory, or District, and the particular county and city, town, or village."

On July 12, 1950, the bank changed its location to Clifton under the provisions of 12 *U. S. C., section 30* which authorizes a change of "the place where its operations of discount

and deposit are to be carried on, to any other place within the same State," subject to limitations not here pertinent. The Comptroller of the Currency issued his certificate of approval of the change.

*Chapter* 9 of *Title* 54 of our *Revised Statutes* provides for taxation of the shares of bank stock by the county board of taxation and *section* 54:9–13 provides:

"The tax so paid to the county treasurer shall be apportioned at the rate of fifty per cent to the county within which the bank is located, and fifty per cent to the taxing district within which its principal place of business is located. The amount so due to a taxing district shall be paid forthwith by the disbursing officer of the county, setting forth, in detail, the amount of the tax received, the institutions by which it was paid, the aggregate amount thereof, and the basis of apportionment."

On March 1, 1951, the Passaic County Board of Taxation ascertained the amount of the tax levied upon the stock as required by *R. S.* 54:9–9 and its minutes of that date show the "Amount due City of Passaic" at one-half the total tax levied. Thereafter the county tax board learned of the change of location to Clifton and by resolution of April 19, 1951, provided that the one-half be payable to Clifton. Both cities were promptly notified and the revised action was reflected in the abstract of ratables filed on May 7, 1951.

Passaic appealed to the Division of Tax Appeals, which affirmed the county tax board's action, and from that judgment prosecutes the present appeal. In their briefs both parties urged procedural objections which, however, were not pressed at the oral argument to the end that the meritorious issue might be determined, and we proceed accordingly to that issue.

The Congress submitted the shares of stock of national banks to taxation by the states by *section* 548, of *Title* 12 of the *United States Code* which provides in part:

"The legislature of each State may determine and direct, subject to the provisions of this section, the manner and place of taxing all the shares of national banking associations located within its limits."

The same section provides certain conditions including the following:

'2. The shares of any national banking association owned by non-residents of any State shall be taxed by the taxing district or by the State where the association is located and not elsewhere;   *   *   *."

Clifton insists that section 548 permits taxation of shares of nonresidents only by the local municipality in which the bank is "located," and that the word "located" refers to "the place" specified in the bank's organization certificate referred to in section 22 cited in the second paragraph of this opinion. These two propositions, if correct, would add up to the conclusion that only Clifton could tax the shares of nonresidents and the state legislative intent must be found to coincide with the asserted construction of the federal statute or else the tax upon nonresidents would exceed the federal permission. We think it unnecessary to consider whether "located" refers to "the place" specified in the bank's organization certificate, because we cannot accept the postulate that the federal statute permits taxation only by the local municipality, nor do we agree that the tax which our state statute authorizes is a tax by the local taxing district.

■ Our courts have heretofore considered the meaning of the word "located" in the federal statutes authorizing taxation of the bank shares and have held the word to refer to the territorial limits of the authority which levies the tax; that is to say, if the tax is a state tax, the shares may be taxed anywhere within the State; if a county tax, then anywhere within the county, and if a local municipal tax, then anywhere within such local taxing district. *State v. Haight,* 31 *N. J. L.* 399 (*Sup. Ct.* 1866) ; *State, Jewell, pros. v. Hart,* 31 *N. J. L.* 434 (*Sup. Ct.* 1866) ; *State, Farmers' National Bank of New Jersey, pros. v. Cook,* 32 *N. J. L.* 347 (*Sup. Ct.* 1867). No federal holding to the contrary is cited. Accordingly, if the tax in question is a county tax, it is of no moment whether the bank in question is "located" in the City of Passaic or City of Clifton within the meaning of

section 548, because both municipalities are in the same county.

That the tax in question is a county tax, we have no doubt. *R. S.* 54:9–5 requires the bank to file a statement with the county board of taxation. *R. S.* 54:9–9 requires the county board to ascertain the tax. And *R. S.* 54:9–10 provides the amount so ascertained "shall be the tax levied and to be paid." *R. S.* 54:9–11 provides that the county board "shall attach to the table of aggregates required to be transmitted to the county treasurer, a tabulation of the taxes so assessed and levied in its county," and requires the county treasurer to collect the tax. We note that *R. S.* 54:9–12 provides that the "shares of common stock of every bank shall be assessed * * * in the taxing district within which the bank's principal place of business is located," but we do not apprehend that this reference to "the taxing district" detracts from the county character of the tax. The essential provision associating the tax in any significant respect with the local taxing district is the provision in *R. S.* 54:9–13, quoted above, which requires the county treasurer to pay 50% of the tax to the taxing district but this provision for distribution of a portion of the tax does not change the tax from a county tax to a local tax. *Cf. State Board of Assessors v. Central R. R. Co.*, 48 *N. J. L.* 146, 280 (*E. & A.* 1886); *United N. J. R. R. & C. Co. v. State Board of Assessors*, 75 *N. J. L.* 788 (*E. & A.* 1908); *Jersey City v. Martin*, 126 *N. J. L.* 353, 359 (*E. & A.* 1941).

Hence we must conclude that since the tax is a county tax, the Legislature was free to levy the tax at any place within the county in which the bank was "located." This conclusion is consonant with the overall purpose of the Congress in prescribing the conditions attached to its consent to taxation of shares of stock of national banks. That purpose was to preclude discrimination against such stock, and subject to compliance with that objective and the other specific restrictions of section 548, the Congress expressly left to the states "the manner and place" of taxing the shares.

The validity of our tax must be judged in the context in which it operates. The rate of taxation is uniform throughout the State and hence does not depend upon local *ad valorem* rates. *R. S.* 54:9–7. In this scheme of things, legislative selection of one municipality as against another within the same county as a mere distributee of a portion of the tax can present no possible conflict with section 548, at least so long as the taxing authority is the county.

Accordingly, since the State was free to distribute a portion of the tax to either municipality, we must determine which the Legislature in fact intended. *R. S.* 54:9–13 provides for distribution to the taxing district within which the bank's "principal place of business is located." Clifton urges that the Legislature thereby referred to the place designated in the organization certificate pursuant to 12 *U. S. C., sec.* 22. Passaic contends that the Legislature intended that place of business which is "principal" from the standpoint of business activity. These are the only alternatives.

*R. S.* 17:9A–3 provides that the certificate of incorporation of a state bank shall set forth the location of "the principal office" of the bank. If by "principal place of business" in *R. S.* 54:9–13 the Legislature intended the place so described in the certificate of incorporation of state banks, it would follow that as to national banks the Legislature intended the substantially equivalent place required by section 22 to be specified in the organization certificate.

Passaic argues, however, that tax statutes should be construed to correlate tax burden with governmental benefit, and hence the place of business which is "principal" for strict corporate purposes should not necessarily be deemed to be "principal" for tax purposes. Accordingly Passaic would ask for an appraisal of the bank's activities in each case, the distributee to be that municipality in whose favor the scales should tip. The suggestion is not barren of appeal but other considerations more than counterpoise it. A determination of the "principal" place of business activity is not a simple,

mathematical matter. There are many phases of business effort, and their evaluation in terms of the business whole may be extremely intricate and beyond satisfactory determination. In the absence of a statutory formula or mandate we are loathe to assume that the Legislature intended such burdensome inquiries.

Passaic cites *Herdman Motor Co. v. State Board of Tax Appeals,* 119 *N. J. L.* 164 (*Sup. Ct.* 1937) and *City of Newark v. State Board of Tax Appeals,* 127 *N. J. L.* 524 (*Sup. Ct.* 1942), in which it was held that the "chief" office of a corporation for the purpose of local taxation upon intangibles was not conclusively its "principal" or "registered" office under the corporation law, but rather presented an issue of fact to be resolved by determining "where the vital acts of its existence are daily done and transacted" as revealed by the variety of considerations to which the opinions refer. We note that in affirming the judgment in the *City of Newark* case, 129 *N. J. L.* 162 (*E. & A.* 1942), the Court of Errors and Appeals expressly left open the validity of this view of the former Supreme Court. At any rate, as pointed out in the *Herdman* case "taxation 'is an intense reality' ", and that guide, which there led to the result described, here points the other way. The tax upon intangibles was at local *ad valorem* rates, and since a corporation was free to pick its principal or registered office, it could arbitrarily select a relative haven and thus control its tax obligation unless there were invoked some rule which would relate tax obligation to tax benefit. Here, however, the rate of taxation is uniform throughout the State, and hence there is no inducement for a taxwise selection of a location, and we might add that as to national banking associations the federal statute assures that the place so specified is a place of at least some appreciable banking activity. See 12 *U. S. C., sections* 22 and 81. Hence, whichever municipality prevails in situations of this kind, the other would ordinarily be contributing some service without recompense. We do not believe that the Legislature intended inquiries into relative contributions of the several

municipalities or involved appraisals of the banking activities at the several banking sites. Hence, we agree with the conclusion of the Division of Tax Appeals that the Legislature intended distribution to the municipality in which the bank in question had the location specified in its organization certificate as amended.

Judgment is affirmed, without costs.