# CHARLESTON.

TALBOTT *v.* WEST VIRGINIA C. & P. R'Y CO.

Submitted Sept. 9, 1896—Decided Dec. 2, 1896.

1. COMPENSATORY DAMAGES—ACTUAL LOSS.
   Compensatory damages are such as measure the actual loss, and are given as amends therefor.

2. COMPENSATORY DAMAGES—WILLFUL NEGLIGENCE.
   Beyond such compensatory damages, the jury are not at liberty

to go, unless there be shown some evil motive on the part of the defendant or his agents, as indicated by reckless indifference to the rights of the plaintiff, or other wanton or willful neglect of duty causing the mischief.

3. JUDGMENTS—INTEREST—CONTRACTS—TORTS.

In judgments on contracts, the judgment must bear interest from the date of the verdict. See section 14, chapter 131, Code. But in other cases, as on verdict in a case of tort, the judgment must bear interest from the date thereof. See section 18, chapter 131, Code.

4. DEMURRER TO EVIDENCE—JURY—JUDGE.

Upon a demurrer to the evidence, it is not for the jury, but for the court, to say whether the accident could have been avoided by the use of ordinary care on the part of the defendant company's servants.

5. DEMURRER TO EVIDENCE—WAIVER OF EVIDENCE—INFERENCES OF FACT.

Upon a demurrer to evidence, the demurrant in this state is not held to waive any of his competent evidence; but, where it conflicts with that of the demurree, it will be regarded as overcome, unless it manifestly appears to be clearly and decidedly preponderant. He waives all objection to the credit of the testimony demurred to, admits all inferences of fact that may be fairly deduced from the evidence, but only such facts as are fairly deducible, and refers it to the court to deduce such fair inferences.

6. RAILROADS—LIVE STOCK—BURDEN OF PROOF—*Prima Facie* NEGLIGENCE.

In the case of injury by the servants of a railroad company to stock straying upon its track, the burden of proof to make out a case of *prima facie* negligence is on the plaintiff. If he fails to do this upon the whole evidence, or demurrer to the evidence by the defendant, judgment should be given for the defendant.

C. W. DAILY and L. D. STRADER for plaintiff in error, cited 33 W. Va. 367, 268; Code, c. 131, s. 14; 42 W. Va. 30, syl. pt. 4.

E. D. TALBOTT for defendant in error, cited 35 W. Va. 438, *etc.;* 32 W. Va. 436; 26 W. Va. 455; 25 W. Va. 570; 17 W. Va. 190; 15 W. Va. 628; 9 W. Va. 252, 270; 38 W. Va. 694.

HOLT, PRESIDENT:

On a writ of error to a judgment rendered by the Circuit Court of Randolph county in an action for killing a horse on the track, on a demurrer to evidence.

Three grounds of error are assigned by defendant below, plaintiff in error, the railway company: "No. 1. The court below erred in rendering judgment for plaintiff on the demurrer to evidence. No. 2. In rendering judgment on the 10th day of May, 1894, with interest thereon from 30th day of January, 1894, the date of the conditional verdict. No. 3. In not setting aside the verdict as excessive." We shall take up these assignments of error in the inverse order.

Were the damages, viz, one hundred and fifty dollars, as found by the conditional verdict of the jury, excessive? The plaintiff is the only witness whose testimony touches at all upon the value of the horse killed by the railway company. He testifies that he paid for the horse seventy two dollars some time before; that he had been offered one hundred and twenty five dollars, and asked one hundred and thirty five dollars, which he considered the value of the horse. No evil motive is shown, no wanton conduct, no reckless indifference to the rights of the owner of the horse, and considering all the facts relating to the act complained of, if wrongful at all, it was certainly not the result of reckless indifference to the rights of the owner or of intentional violation of them, but, at the most, was the want of the exercise of judgment. Therefore, if a case for plaintiff at all, it was a case for compensatory damages, such as measure the actual loss, and are given as amends therefor (see *Railway Co.* v. *Arms*, 91 U. S. 489 and note); and beyond that the jury were not at liberty to go, but they had the right to add the interest from the time of loss to the finding of their verdict, which would have brought it up to something near one hundred and fifty dollars by taking one hundred and thirty five dollars as the value of the horse; but, taking one hundred and twenty five dollars as the value, the evidence furnishes no data and means by which the jury could ascertain and fix merely compensatory damages beyond one hundred and twenty five dollars and interest. See *Watts* v. *Railroad Co.*, 39 W. Va. 196 (19 S. E. 521.) Again, so far as a railroad company may be the defendant, it has been held that such "company can not be made responsible for exemplary damages on account of injuries done by one of its servants, even though the act was wanton

and malicious, unless the act was expressly or impliedly authorized or ratified by the company." *Ricketts* v. *Railway Co.* 33 W. Va. 433 (10 S. E. 801); *Downey* v. *Railway Co.* 28 W. Va. 732, 743; See Patt. Ry. Acc. Law, § 392. See, also, on this subject, *Railroad Co.* v. *McEwan* (Ky.) 2 Am. & Eng. Ry. Cas. Ann. 439, notes (31 S. W. 465).

Assignment No. 2: If this had been an action on contract, then section 14 of chapter 131 of the Code requires that the jury should have found the aggregate of principal and interest due at the time of the trial, and that the judgment should have been entered for such aggregate, with interest from the date of the verdict. But this action being for a tort, and not on contract, judgment should have been rendered for the sum found to bear interest from the date thereof, as required by section 18 of chapter 131 of the Code. In this case the judgment was in violation of this statute, rendered for the sum found, one hundred and fifty dollars and interest, not from the 10th day of May, 1894, the date of its rendition, but from the 30th day of January, 1894, the date of the verdict. This was error. See *Hawker* v. *Railroad Co.* 15 W. Va. 628; *Murdock* v. *Insurance Co.* 33 W. Va. 407 (10 S. E. 777). This error could be amended in this Court, as the proper date is found in the record.

No. 1: Did the court err in rendering judgment for the plaintiff on the demurrer to the evidence? On behalf of plaintiff six witnesses were examined, none of whom were present except Sam Collett, who was on the train. On behalf of defendant four witnesses were examined, all of whom were present. There is no conflict in the testimony on any material point, and, giving full credit to the evidence on behalf of plaintiff, it gives rise to no fair inference, in conflict with defendant's testimony. The train was running in daytime, south, from Elkins to Beverly. As the train was going round the curve, near the two-mile post north of Beverly, the engineer of the locomotive saw four horses near the track, and at once blew the whistle for brakes, blew the alarm whistle, shut off steam, and put on air brakes, and thus got the train under control as soon as it could be done. The horses ran up the track ahead of the engine. First a black horse was on the track. It

jumped off, and the roan horse in question got on—a large horse, weighing one thousand and four hundred pounds. He was running just ahead of the train. The train was under control, and running slowly, not more than five miles an hour. The horse was running faster, and gaining on the train, and, being some thirty or forty yards ahead of the locomotive, stumbled, and fell to his knees, and, in the struggle, fell, quartering the track on the left side, going south, where he lay on his left side in the ditch, between the ends of the cross ties, with his feet against the side of a steep cut, and his back and head against the ends of the cross ties. Another witness, who was present, says he saw the horse stumble, right himself, make a jump or two against the bank, and fall back along the side of the track. The train was checked, and running very slow, and came to a stop, with the door of the engine cab about opposite the horse. The engineer did not see the horse any more after he fell, but the fireman saw him struggle once, moving his head back towards the cross ties, just as the engine came within about six feet of where he lay. All agree that he was not struck by the front of the engine. All the witnesses say that the horse was running faster than the engine, except plaintiff's witness Collett, who says the train was running about as fast as the horse. The plaintiff's theory is that the horse stumbled and fell, and, in getting up and off the track, attempted to escape up the steep bank of the cut on the left side, and fell back into the position already described, and just then the engine passed, and the cylinder cock struck the horse in the back of the head, mashing neckbone, from which the horse died almost instantly. The other theory is that he broke his neck when he fell back from the side of the cut or in some way caused his own death at that time. In my view, the two theories are substantially consistent; that is, the horse might have fallen back, striking his head on the ends of the cross ties, and might immediately afterwards have been struck, as above described, by the cylinder cock, as the engine passed. The two together, or something like them, seem necessary to account for the undisputed facts. But the burden of proof is on the plaintiff to make out a case

of *prima facie* negligence, which he has not done in my view, admitting his own hypothesis to be correct. Having his engine slowed down, say, to five miles an hour, and under complete control, with the running horse ahead, going faster, or, at any rate, as fast as he was, the engineer was not compelled to anticipate the falling of the horse, and provide therefor by coming to a halt. Such a requirement, under the undisputed facts of this case, is against reason, and can not be law. The engineer had a right to anticipate that this horse would, as its fellows did, soon pass off the track to the right or left, out of danger, and, to that end, took all the precautions that his duty to take or due care required.

The counsel for plaintiff insists that "it was for the jury to say whether the accident could have been avoided by the use of ordinary care and diligence on the part of the company's servant." The jury having found, as in this case, a verdict in the alternative, subject to the opinion of the court upon the demurrer to the evidence, it was the duty of the court, and not of the jury, to say, under the proper rules governing the subject [see *Mapel* v. *John*, 42 W. Va. 30 (24 S. E. 608)] whether the plaintiff has made out his case. In other words, it is the duty of the court to ascertain from the evidence the facts proved, or the essential facts not proved, to apply the proper rule of law, and impliedly embody in the judgment rendered the point of law growing out of the facts proved.

If the damages were held to be excessive, as improperly including exemplary damages, the verdict and judgment would be set aside, and a new trial be awarded. If the only error had been in rendering judgment with interest from the 30th day of January, 1894, instead of from the 10th day May, 1894 (the date of the judgment) that could have been corrected, and the judgment affirmed. On the demurrer to the evidence, the Court is of the opinion that the evidence is insufficient to support a verdict for plaintiff and therefore judgment thereon is rendered for the defendant. Reversed and judgment for defendant.