In the Matter of the Estate of OLIVER D. SIGNS, Deceased.

Surrogate's Court, Tioga County, January 10, 1967.

*Travis & Johnson (William H. Johnson, Jr.,* of counsel), for petitioner. *Andrew F. Siedlecki,* special guardian for Kayln S. Sharp. *William M. Donnelly,* special guardian for Zane Signs.

GEORGE BOLDMAN, J. The proposed compromise of the cause of action for decedent's wrongful death for $70,000, and for other incidental relief is granted. The attorneys' compensation for legal services is fixed and allowed at $20,000, plus out-of-pocket disbursements of $75.05.

The court approves the stipulation of all interested parties that the sum of $750 from the proceeds of the compromise settlement be allocated to the estate of the decedent as compensation for conscious pain and suffering and that the life expectancy tables prepared by the United States Department of Health, Education and Welfare, designated as "Vital Statis-

tics of United States '' be used as the mortality table for all computations to be made in the proceeding. (*Matter of Vacca,* 42 Misc 2d 120 [1963].) The court further approves the stipulation that the funeral bill, attorneys' fees and disbursements, and allowance for special guardians which is fixed in the sum of $450 each, be allowed from the proceeds of the death settlement.

The sole question remaining to be determined by the court concerns apportionment of the net proceeds of the wrongful death settlement among the surviving widow and two children.

The decedent, Oliver D. Signs, then 40 years of age, was killed in an automobile accident on May 7, 1965. He was survived by his widow, Esther R. Signs, 40 years of age; a daughter, Kayln Signs, who was born on July 30, 1946; and a son, Zane Signs, who was born October 11, 1949. Kayln Signs married Ronald Sharp on January 29, 1966, and now resides with him at Ludlowville, New York; Zane Signs resides with his mother at R. D. No. 2, Candor, New York.

From the testimony elicited at the hearing it was established that Zane Signs is '' a next of kin '', was dependent and suffered a pecuniary loss as a result of his father's death, which gives him standing to share in the recovery.

The status of Kayln Signs Sharp presents a closer question and recourse must be had to the testimony offered to the court for evaluation as a basis for the exercise of its discretion in making an apportionment.

The only unusual features of the present case are that Kayln Signs Sharp married after the death of her father, was not residing in the home of the father at the time of his death, and was enfranchised at that time to the extent that she was gainfully employed.

In analyzing the testimony it is found that it is not of such character as to alter the general rule formulated by the courts for distribution of death benefit proceeds.

Here, as in *Gross* v. *Abraham* (306 N. Y. 525 [1954]), a pecuniary loss or injury was suffered by Kayln Signs Sharp as a result of her father's death which is capable of consideration and evaluation. It is apparent that even though Kayln was away from home and not immediately dependent upon her father for support she was not beyond the reach of his care and bounty, and thus she suffered a pecuniary injury and should share in the recovery.

The fact that the daughter married after her father's death is deemed to have no effect in altering the extent of her loss accruing as a result of her father's death (*Matter of Saxe,* 21 Misc 2d 811 [1959]). To hold otherwise would, it seems, coerce

a daughter in a case such as this to delay her marriage until a recovery is had for her father's death, for fear of financial loss.

The fact that Kayln Signs Sharp was working at the time of her father's death does not preclude her from sharing in the recovery. In *Matter of Frank* (286 App. Div. 986 [1955]) the fact that a widow had an independent income did not render her pecuniary loss as a result of the death of her husband any less for the purposes of apportioning damages recovered for wrongful death of her husband. In *Matter of Silverstein* (48 Misc 2d 1029 [1966]), decedent died leaving a widow who was a second wife. He also had a son by a previous marriage, who was adopted by the decedent's former wife's present husband on consent of the decedent. The administratrix, who was the decedent's second wife, petitioned the court for approval of the compromise settlement and that distribution be made between herself and her son, an issue of her marriage with the decedent. The special guardian for the adopted child acknowledged the decedent was not legally obligated to support the child; he had, nevertheless, made regular gifts of which the child would no longer be the beneficiary, and in addition thereto the special guardian contended that decedent planned to see to it that the child receive an education. The court (p. 1031), in scheduling a hearing to determine whether or not the child in question sustained a pecuniary loss, said that the adopted child "need not have been dependent upon the decedent to share in the recovery. All that need be shown is that the child is a next of kin and suffered a pecuniary loss (*Gross* v. *Abraham*, 306 N. Y. 525)." It is found from the testimony in this case that Kayln Signs Sharp did suffer pecuniary loss as a result of the death of her father.

Upon all the facts and based upon the age of the mother and the probable duration of the minority of each of the children of decedent, the court determines that the net recovery arising from settlement of the wrongful death action, in accordance with section 133 of the Decedent Estate Law, under the formula in *Matter of Kaiser* (198 Misc. 582 [1950]) shall be distributed as follows: To Esther R. Signs, the wife, 80.31%; to the son, Zane Signs, 13.96%; and to Kayln Signs Sharp, the daughter, 5.73%.