WILLIAM JENNINGS SALERNO, *administrator, etc.*

*v.*

JOHN MANCHIN

*and*

WILLIAM JENNINGS SALERNO, *administrator, etc.*

*v.*

JOHN MANCHIN

(No. 13441)

Decided December 3, 1974.

*Furbee, Amos, Webb & Critchfield, Russell L. Furbee, Albert J. Lemley and Alan B. Mollohan* for appellant.

*Paule E. Parker, Jr., Clarence M. Rogers* for appellee.

BERRY, JUSTICE:

This is an appeal by John Manchin, the defendant below and hereinafter referred to as the defendant, from a final order of the Circuit Court of Marion County on January 3, 1973 which overruled defendant's motion to set aside the verdicts of the jury in favor of the plaintiff and to grant the defendant a new trial. Two separate actions were originally instituted by William Jennings Salerno as administrator of the estates of Jane Fortney Salerno and Michael Anthony Salerno, but both actions were consolidated and tried together as one action. Jane Fortney Salerno, the wife of William Jennings Salerno,

and Michael Anthony Salerno, the son of William Jennings Salerno, were killed as a result of a fire which destroyed the defendant's retail furniture and appliance store in Farmington, West Virginia on November 11, 1968. Under the provisions of West Virginia's wrongful death statute the jury returned a verdict in favor of the administrator for the death of Jane Fortney Salerno in the total amount of $70,760.50, which included $60,000 for the financial and pecuniary loss sustained by the deceased's husband and the deceased's daughter, $10,000 exclusive of financial and pecuniary loss, and $760.50 for funeral expenses. The jury also awarded damages for the death of Michael Anthony Salerno in the total amount of $10,760.50 which included $10,000 which was exclusive of any sum for financial or pecuniary loss, and $760.50 for damages for funeral expenses.

The defendant's primary contention is that the $60,000 awarded as a financial or pecuniary loss sustained by William Jennings Salerno and Toni Daine Salerno, the surviving husband and daughter, was improper under the West Virginia wrongful death statute because neither the husband nor the daughter were "dependents of" Jane Fortney Salerno, the deceased, within the meaning of the statute. This Court granted the defendant's appeal on December 17, 1973 and the case was submitted for decision on October 1, 1974 upon the arguments and briefs filed on behalf of the respective parties.

During the trial, on the theory that William Jennings Salerno was a "dependent distributee" within the meaning of the wrongful death statute, the plaintiff introduced evidence to the effect that prior to her death Mrs. Salerno was in good health and performed all of the housekeeping chores, the cooking, the laundry and had taken care of the children. Subsequent to his wife's death Mr. Salerno hired housekeepers and has been paying approximately $100 a month for their services. Mr. Salerno also testified that prior to her death, his wife cut the grass, canned vegetables out of the garden, made a few clothes for herself and her daughter and

occasionally drove the truck on errands. Mr. Salerno testified that figured conservatively his wife each week had spent approximately 21 hours cooking, 14 hours dishwashing, 10 hours laundering, 14 hours housekeeping, 10 hours chauffeuring and 40 hours caring for the children. He also testified that after his wife's death he paid approximately $1.50 an hour for various women to do the housecleaning and to help with taking care of his daughter.

Thomas E. Hewitt who is the manager of the West Virginia Department of Employment Security in Fairmont, Marion County, West Virginia, testified for the plaintiff that according to his notes the reasonable hourly wage for cooks was $1.25 an hour, for dishwashers approximately $1 an hour, for laundresses $1.20 an hour, for someone to do light housework $1.20 an hour, for chauffeurs $1.90 an hour and for babysitters from $.75 to $2 an hour. However, on cross-examination it was ascertained that these figures were acquired by Mr. Hewitt from the Clarksburg Employment Security office via telephone, and consequently, the defendant objected to the introduction of this evidence although his objection was overruled by the court.

The plaintiff next introduced the testimony of Dr. Richard Raymond who was an economics expert. His testimony was based on the hourly rates provided by Mr. Hewitt and the estimated time that Mr. Salerno had calculated that his wife had spent on each of the household chores each week and he concluded that the replacement value for Mrs. Salerno's work over forty years, which was Mr. Salerno's life expectancy, would amount to $156,162.

The defendant contends that the plaintiff failed to make a prima facie case against him and failed to prove any negligence on his part and that even if there were negligence on the part of the defendant the negligence was not the proximate cause of the deaths of plaintiff's decedents. The defendant also contends that the court

erroneously instructed the jury on the award provisions of the West Virginia wrongful death statute.

There is no merit to the assignment of error of the defendant that the plaintiff failed to prove negligence on the part of the defendant, or that the defendant's negligence was not the proximate cause of the deaths of plaintiff's decedents. The evidence clearly shows that the plaintiff's decedents were on the third floor of the defendant's building viewing certain merchandise the defendant was selling and when the building caught fire they were trapped, without any means of escape. There were no fire sprinklers in the building, no fire doors, no fire detection equipment and no fire alarm system. The question of negligence was one for jury determination and the evidence clearly warranted its finding on this matter.

The assignment of error with regard to the primary question as to whether the husband and daughter of the decedent were dependent distributees is not well taken. It is the contention of the defendant that the husband and daughter were not dependents of Mrs. Salerno and that they did not suffer any financial or pecuniary loss as the result of her death. The West Virginia wrongful death statute, Code, 55-7-6, as amended, referred to as the West Virginia Lord Campbell's Act, under which these actions were instituted, reads in part as follows:

> Every such action shall be brought by and in the name of the personal representative of such deceased person, and the amount recovered in every such action shall be recovered by said personal representative and be distributed in accordance herewith. In every such action the jury may award such damages as they deem fair and just, not exceeding ten thousand dollars, and the amount recovered shall be distributed to the parties and in the proportion provided by law for the distribution of personal estate left by persons dying intestate. In addition, the jury may award such further damages, not exceeding the sum of

one hundred thousand dollars, as shall equal the financial or pecuniary loss sustained by the dependent distributee or distributees of such deceased person, and shall be distributed as though part of the decedent's estate to decedent's dependent distributees in the proportions provided by the laws of descent and distribution.

In every such action and in addition to the damages awarded pursuant to the foregoing provisions hereof, the personal representative of the deceased shall be entitled to recover the reasonable funeral expenses of such deceased person and the reasonable hospital, medical and other expenses incurred as a result of the wrongful act, neglect or default of the defendant or defendants which resulted in death.

The case of *Ruggiero v. Manchin*, 456 F.2d 1282 (4th Cir. 1972) was an action arising out of the same fire in which plaintiff's decedents died. It was held in that case that the husband of the decedent was a dependent within the meaning of the West Virginia wrongful death statute because the deceased performed all duties of a housewife, made clothes for herself and her daughters, provided food for the family and performed other chores. In addition, the deceased had earned $1,500 in the year preceding her death. It was held in that case that the husband depended upon his wife for services that had a pecuniary value, even though the dependency was only partial. It was held in the case of *Pugh v. Yearout*, 212 Va. 591, 186 S.E.2d 58 (1972) that although proof of dependency was necessary under the Virginia wrongful death statute for certain recoveries the dependency could be partial and did not have to be total. That court also held that services rendered by a wife have a monetary value to the husband.

It was clearly indicated in the case of *Adams v. Sparacio*, W. Va., 196 S.E.2d 647 (1973) that a dependent distributee may be one who depended upon the decedent for services, citing the case of *Ruggiero v. Manchin*, *supra*. This matter is covered in point 6 of the case of

*Adams v. Sparacio, supra,* which reads as follows: "A dependent distributee of a deceased in a wrongful death action, as contemplated by *Code* 55-7-6, as amended, is entitled to recover damages for financial or pecuniary loss occasioned by such death only if he was, in fact, dependent upon the deceased for support and such support may have been monetary or for services." It is generally held that under wrongful death statutes a dependent distributee may be one who is partially dependent upon the deceased for services and may recover for pecuniary loss within the limits of the statute. *Carianni v. Schwenker,* 38 N.J.Super. 350, 118 A.2d 847 (1955); *Bohrman v. Pennsylvania R. Co.,* 23 N.J.Super. 339, 93 A.2d 190 (1952); *Domijan v. Harp,* 340 S.W.2d 728 (Mo. 1960).

It is the contention of the defendant that the testimony of Thomas A. Hewitt who was the manager of the West Virginia Department of Employment Security of Marion County was hearsay because he testified as to the rate paid for domestic help from information obtained over the telephone from the Clarksburg office of Employment Security. Defendant also contends that Hewitt did not ascertain the going rates for any of these services paid by employers in Harrison County, and that the maximum rates were used. Technically, where a witness testifies with regard to statements of another for the purpose of proving the truth of the matter asserted, such evidence constitutes inadmissible hearsay. 29 Am. Jur. 2d *Evidence* § 497; *State v. Paun,* 109 W. Va. 606, 155 S.E. 656 (1930). However, this witness was in the position of an expert for the type of evidence given by him. He was the manager of the Employment Security office in Marion County and he was familiar with the going rates for such services in Marion County. However, Hewitt testified that the rates for such services were similar in Harrison and Marion counties and it appears that the decedents resided near the Harrison-Marion county boundary line. It has been held in similar circumstances that the testimony of such a witness as to

rates is proper. *Sun Cab Company v. Walston*, 15 Md.App. 113, 289 A.2d 804 (1972).

The defendant also objected to the testimony of the expert witness, Dr. Richard Raymond, who based his testimony on rates given to him by the witness Hewitt. Using the rates given to him Dr. Raymond arrived at an aggregate pecuniary loss of $367,830. This figure was reduced to a present value of $156,162. This amount was based on a total weekly cost of $165.25 for the various services replacing the services performed by Mrs. Salerno. Mr. Salerno testified that he only paid about $100 a month for many of the services which the expert Raymond had calculated would cost $165 a week. Therefore, Mr. Raymond's total estimate for the cost of the services lost by Mr. Salerno by virtue of his wife's death was several times more than that which Mr. Salerno had actually been paying for the services. The jury's verdict, however, was only a little over one third of the pecuniary loss that Mr. Raymond estimated the plaintiff's decedents had suffered. Ordinarily, the verdict of the jury in a case of this kind, based on such evidence, will not be disturbed if there is a rational basis for such verdict taking into consideration all of the evidence relating thereto. 19 M.J. *Verdict* § 36; *Virginia Land Immigration Bureau v. Perrow*, 119 Va. 831, 89 S.E. 891 (1916).

The assignment of error relating to the instructions offered by the plaintiff and given by the court that the jury could not include or consider any financial or pecuniary loss suffered within the initial $10,000 damages provided for in the statute, which was properly objected to, is well taken. The instructions involved in this matter are practically identical and read in part as follows:

> * * * you are instructed that you may award * * * such amount as you shall deem fair and just for their grief, mental distress, bereavement, loss of companionship, love and affection, and loss of consortium, not exceeding $10,000 but you shall not include therein any sum for financial or pecuniary loss.

The objection to the instruction was:

> Misstatement of the law since the jury may consider within the $10,000 financial or pecuniary loss.

Recovery with regard to the $10,000 is not based on the fact that the distributees have to be dependents of the deceased. *Kelley v. Ohio River Railroad Co.*, 58 W. Va. 216, 52 S.E. 520 (1905). It was stated in the case of *Pugh v. Yearout, supra,* involving a similar statute, that: "The dependents may be all or some of the same persons as those who are entitled to recovery for solace, or entirely different persons." This Court has consistently held that pecuniary loss may be considered in connection with the first $10,000 award, as well as in excess of the $10,000. *Lester v. Rose,* 147 W. Va. 575, 130 S.E.2d 80 (1963); *Stamper v. Bannister,* 146 W. Va. 100, 118 S.E.2d 313 (1961); *Wigal v. City of Parkersburg,* 74 W. Va. 25, 81 S.E. 554 (1914); *Kelley v. Ohio River Railroad Co., supra.* The giving of such an instruction which does not clearly state the law and which may be detrimental to recovery under the wrongful death statute is reversible error.

The judgment of the Circuit Court of Marion County in the case of Michael Anthony Salerno is affirmed; however, for the reasons heretofore stated, the judgment of the Circuit Court of Marion County in the case of Jane Fortney Salerno is reversed, the verdict is set aside and the defendant awarded a new trial.

*Affirmed in part;*
*reversed in part;*
*remanded with*
*directions.*