JACK E. BOND, ADMR.

*v.*

THE CITY OF HUNTINGTON, *etc., et al.*

(No. 14307)

Decided March 31, 1981.

_____

*Marshall & St. Clair* and *James W. St. Clair* for appellant.

*Greene, Ketchum, Mills, Bailey & Tweel* and *Menis E. Ketchum* for appellees.

MILLER, JUSTICE:

Jack E. Bond, the administrator of the estate of Cheryl S. Bond, appeals from the summary judgment order of the Circuit Court of Cabell County which denied his claims, under our 1965 Wrongful Death Act, for loss of services of his emancipated daughter, for punitive damages, and for prejudgment interest.

According to the affidavits and exhibits submitted in conjunction with the motion for summary judgment, it

appears that Cheryl Bond, age 18, was killed on October 8, 1975, in an automobile collision. Her vehicle was struck at the intersection of Twelfth Avenue and Eighth Street in Huntington by a City of Huntington police car operated at that time by an on-duty city patrolman. The appellant stated in his complaint that the police car, before the impact, was traveling at a high rate of speed without the operation of warning lights, a violation of the law. The appellant further alleges that the police car failed to stop or yield at the stop sign that marked the intersection and struck Cheryl Bond's vehicle, which had the right of way and was already in the intersection. Cheryl Bond was killed in the collision.

The appellant's exhibits indicate that the city patrolman had an extensive record of prior automobile collisions. At the time of the accident, the deceased was 18 years old and employed, living with her parents to whom she contributed household services but no direct monetary support.

The deceased's administrator, in his amended complaint against the patrolman and the City of Huntington, as his employer, alleges gross negligence and recklessness on the part of the patrolman in the operation of the patrol car. As against the City, he alleges willful and wanton negligence in employing the patrolman under circumstances in which the City knew, or should have known, that the patrolman was physically and mentally unfit to operate a police car. The complaint set forth as damages $10,000 in general damages, $1,700 in funeral expenses, $100,000 for pecuniary loss, and $100,000 in punitive damages.

On motion for summary judgment, the trial court ruled that "plaintiff is only entitled to recover the maximum sum of $10,000 plus funeral expenses." Recovery for loss of services, punitive damages, and prejudgment interest was not allowed. The appellant contends that the trial court erred because there were sufficient facts in the record to permit some recovery for pecuniary loss and, as a legal matter, punitive damages and prejudgment interest were also recoverable.

## I.

## INTERPRETATIVE BACKGROUND

Two propositions are apparent when we look at the history of our Wrongful Death Act. The first is that in recent years the Legislature has liberalized the scope of the statute by increasing the amount of damages recoverable and by expanding the type of damages recoverable. The second proposition is that this Court has historically given the State's Wrongful Death Act[1] a liberal construction.

Up until 1955,[2] the maximum amount that could be recovered in an action for wrongful death was ten thousand dollars. W. Va. Code, 55-7-6 (1931). Under this statute it was not necessary to show either pecuniary loss or dependency in order to recover. *Utt v. Herold,* 127 W. Va. 719, 34 S.E.2d 357 (1945); *Kelly v. Ohio River Railroad Co.,* 58 W. Va. 216, 222, 52 S.E. 520, 523 (1905). The recovery under this statute was essentially for solatium, with compensatory damages permitted if shown, as long as the ten thousand dollar limit was not exceeded.

In 1955, the amount of recovery was changed so that an additional ten thousand dollars could be recovered by showing evidence of "financial or pecuniary loss sustained by a distributee or distributees." W. Va. Code, 55-7-6 (1955). In *Lester v. Rose,* 147 W. Va. 575, 130 S.E.2d 80 (1963), we concluded that this 1955 amendment permitted the recovery of an additional ten thousand dollars upon a showing of some pecuniary loss and that the initial ten

---

[1] While we use the phrase "the State's Wrongful Death Act," it consists of three statutes: *Code* 55-7-5, which deals with the creation of the cause of action; W. Va. Code, 55-7-6, which relates mainly to the damages that are recoverable; and *Code* 55-7-7, which centers on how such claim may be compromised.

[2] In 1884 the maximum amount of recovery was increased from $5,000 to $10,000. In 1923 the class of those who could recover was broadened from "widow and next of kin" to "intestate beneficiaries." *See Wilder v. Charleston Transit Co.,* 120 W. Va. 319, 197 S.E. 814 (1938), for a discussion of our pre-1931 acts.

thousand dollars could be recovered without a showing of pecuniary loss.

In 1961, the Legislature increased the overall limit from $20,000 to $25,000. With that amendment, $15,000 could be recovered for pecuniary loss in addition to the initial $10,000 for solatium. W. Va. Code, 55-7-6 (1961). In 1965, the maximum amount of recovery for pecuniary loss was extended to $100,000. The statute also recognized for the first time recovery of the "funeral, hospital, medical and such other expenses" resulting from the wrongful death. W. Va. Code, 55-7-6 (1965).

Finally, in 1976 the statute was substantially broadened to remove any maximum limit on the amount of recovery. The dependent distributee limitation was largely removed and the elements of recoverable damages were expanded.[3] W. Va. Code, 55-7-6 (1976).

As we have noted, not only has the Legislature liberalized the wrongful death recovery statute through the years, but this Court has adopted a liberal construction of the statute from our earliest cases. Thus, in *Richards v. Riverside Iron Works*, 56 W. Va. 510, 515, 49 S.E. 437, 438 (1904), we said:

> "The statute is remedial and should be construed liberally for the purpose of carrying out the legislative intent."

*See also Baldwin v. Butcher*, 155 W. Va. 431, 184 S.E.2d 428, (1971); *Wilder v. Charleston Transit Co.*, 120 W. Va. 319, 197 S.E. 814 (1938).

---

[3] The 1976 Act requires no dependency for those in certain family relationships but retains dependency as to the remainder class. Its provision on dependency is:

"In any such action for wrongful death the jury may award such damages as to it may seem fair and just, and may direct in what proportion they shall be distributed to the surviving spouse and children, including adopted children and stepchildren, and grandchildren of the deceased, or if there be none such, then to the parents, brothers and sisters of the deceased, if there be none such, only then to such person or persons who were dependent upon the decedent for support."

A review of our cases reveals we have given more than lip service to this rule of liberal construction. In *Baldwin*, we concluded that, despite a considerable split of outside authority on the point, an action could be brought under our 1965 wrongful death statute by the personal representative of a viable although unborn child. In *Lester v. Rose*, 147 W. Va. 575, 130 S.E.2d 80 (1963), we concluded that the 1955 wrongful death statute allowed $10,000 for damages whether or not a pecuniary loss was shown. Even though our 1955 wrongful death statute did not authorize the personal representative to collect funeral, hospital and medical expenses connected with the wrongful death, in *Stamper v. Bannister*, 146 W. Va. 100, 118 S.E.2d 313 (1961), we nevertheless held they were proper elements of damages.

With this interpretative background, we address the issues raised by the appellant, namely, whether the court erred in granting summary judgment for the appellee, thereby denying the appellant an opportunity to prove claims for pecuniary losses, punitive damages and prejudgment interest.

## II.

### PECUNIARY LOSS

The question of whether the surviving parents of a deceased unmarried daughter may recover for pecuniary loss arising from her wrongful death under W. Va. Code, 55-7-6 (1965), turns on the question of whether the parents are "dependent distributees." The word "dependent" was first inserted into our statute in 1965.[4]

Filed in the record of this case is the affidavit of the appellant administrator which sets out the services performed by the decedent who lived at home with her parents:

> "Decedent assisted with the cooking, dishwashing, laundry, housekeeping including cleaning and

---

[4] Prior to 1965, the extent of recovery of pecuniary loss was $15,000 above the initial $10,000 for solatium. The statute provided "further damages as shall equal such financial or pecuniary loss to such distributee or distributees. . . ." W. Va. Code, 55-7-6 (1961).

dusting, yard work, garden work, canning, running errands for family members, nursing sick family members, making clothes for herself and for other members of her family, looking after younger children, receiving phone calls relating to her parents' business, chauffeuring family members, participated in home repairs and maintenance including painting and other tasks and otherwise performed many other services which were of financial and pecuniary value."

In Syllabus Point 2 of *Salerno v. Manchin*, 158 W. Va. 220, 213 S.E.2d 805 (1974), we held in regard to the 1965 wrongful death statute:

"Under the West Virginia wrongful death statute a dependent distributee may be one who is partially dependent upon the deceased for services and may recover for pecuniary loss within the limits under the statute."

In *Salerno*, a deceased wife's surviving husband and daughter asserted that they were dependent distributees. This Court in upholding their position outlined the type of services that the deceased wife had rendered to them during her lifetime:

"Mr. Salerno also testified that prior to her death, his wife cut the grass, canned vegetables out of the garden, made a few clothes for herself and her daughter and occasionally drove the truck on errands. Mr. Salerno testified that figured conservatively his wife each week had spent approximately 21 hours cooking, 14 hours dishwashing, 10 hours laundering, 14 hours housekeeping, 10 hours chauffeuring and 40 hours caring for the children." 158 W. Va. at 220, 213 S.E.2d at 807.

The Court in *Salerno* relied, in part, upon our earlier case of *Adams v. Sparacio*, 156 W. Va. 678, 690, 196 S.E.2d 647, 655 (1973), where we concluded without any factual elaboration that the decedent's wife was dependent upon him but that his daughter "was in no manner dependent upon her deceased father." Both *Adams* and *Salerno* cited *Ruggiero v. Manchin*, 456 F.2d 1282 (4th Cir. 1972), where the Court

construed our 1965 wrongful death statute to permit the husband to recover pecuniary loss for a deceased wife who had rendered services to him and earned a small salary during her lifetime. The court established that the dependency could be partial and that pecuniary loss could arise from services rendered.

With regard to the instant case, the appellee argues that because the appellant's deceased daughter was emancipated, working and made no monetary contribution for room or board to her parents, with whom she was living, there was no actual dependency created. The appellee cites *Hall v. Carwile*, 214 Va. 570, 202 S.E.2d 926 (1974), where the Virginia court refused to find any financial or pecuniary loss to the parents or brothers of a deceased daughter. She was employed but did not pay any room or board to her parents, however:

> "She occasionally purchased groceries and furniture for the home, helped about the house, and contributed to the support of the family when her father was hospitalized at some time before the fatal accident. She bought clothes for one of her brothers, permitted him to use her automobile, and gave each of her brothers an indeterminate amount of spending money each week." 214 Va. at 570, 202 S.E.2d at 927.

We believe *Hall* may be distinguished from this case and other Virginia cases on the basis that there was apparently no attempt to establish a monetary value for the services rendered by the deceased daughter. Certainly, the Virginia court has, in *Pugh v. Yearout*, 212 Va. 591, 595, 186 S.E.2d 58, 62 (1972), adopted a rather broad definition of pecuniary and financial loss:

> "A person is financially or pecuniarily damaged by the death of another if such person would have been financially or pecuiarily benefitted by the continuing life of the decedent. Such benefits include monetary contributions made by a decedent to or for the benefit of a dependent and also services rendered a dependent that relate to and have monetary value."

This is consistent with our decisions in *Salerno v. Manchin*, 158 W. Va. 220, 213 S.E.2d 805 (1974), and *Adams v. Sparacio*, 156 W. Va. 678, 196 S.E.2d 647 (1973). In West Virginia there is no requirement that the surviving dependent be legally dependent on the deceased for support only that, in fact, they were receiving some money or services from the deceased. Other jurisdictions support this position. *E.g., MacDonald v. Quimby*, 350 Mich. 21, 85 N.W.2d 157 (1957); *Wente v. Shaver*, 350 Mo. 1143, 169 S.W.2d 947 (1943); *Dooley v. Seaboard Air Line Railway Co.*, 163 N.C. 454, 79 S.E. 970 (1913). In both *Salerno* and *Adams*, the deceased wives had no legal duty to support their husbands so there was no legal dependency, but there was a factual dependency established. Were it not for the word "dependent" when used with the word "distributee" in the statute, there would be no necessity of showing even a factual dependency. In jurisdictions where their wrongful death statutes allow recovery for "pecuniary financial loss" or in those jurisdictions with a "fair and just" compensation standard for wrongful death recovery, courts do not require any showing that beneficiary or distributee be actually dependent on the deceased. *E.g., Limbaugh v. Woodall*, 121 Ga. App. 638, 175 S.E.2d 135 (1970); *Kirkpatrick v. Bowyer*, 131 Ind. App. 86, 169 N.E.2d 409 (1960); *Fehland v. St. Paul*, 215 Minn. 94, 9 N.W.2d 349 (1943); *Domijan v. Harp*, 340 S.W.2d 728 (Mo. 1960); *Manor v. Gagnon*, 92 N.H. 435, 32 A.2d 688 (1943); *In re Estate of Signs*, 52 Misc.2d 634, 276 N.Y.S.2d 476 (1967); *Rogers v. Worthan*, 465 P.2d 431, 438 (Okla. 1970); *Missouri-Kansas-Texas Railroad Co. v. Pierce*, 519 S.W.2d 157 (Tex. App. 1975); *Pancratz v. Turon*, 3 Wash. App. 182, 473 P.2d 409 (1970); S. Speiser, 1 *Recovery for Wrongful Death* §3.34 (2nd ed. 1975).

In summary, it is clear that we have interpreted *Code* 55-7-6 (1965), to mean that there must be some showing of legal or factual dependency at the time of death to recover for pecuniary loss. While legal dependency is easily shown, factual dependency can be shown by evidence that the deceased rendered services for which a monetary value can

be estimated.[5] It is clear that this test has been met by the affidavit filed by the decedent's father in this case. We, therefore, conclude that the court erred in awarding summary judgment against the appellant on the pecuniary loss claim.

## III.

### PUNITIVE DAMAGES

The next issue raised by the parties is whether punitive damages can be recovered under our Wrongful Death Act. We have in the past recognized that punitive damages could be considered as a part of recovery under an earlier wrongful death statute. In Syllabus Point 6 of *Turner v. Norfolk & Western Railroad Co.*, 40 W. Va. 675, 22 S.E. 83 (1895), we stated:

> "In all cases of negligence the law governing the assessment of exemplary, punitive, or vindictive damage is the same whether death result or not."

*See also Kelley v. Ohio River Railroad Co.*, 58 W. Va. 216, 223, 52 S.E. 520, 523 (1905); *Thomas v. Wheeling Electrical Co.*, 54 W. Va. 395, 404, 46 S.E. 217, 220 (1903).

It must be remembered that in 1895, when *Turner* was decided, our statute on wrongful death provided for a maximum $10,000 recovery which included not only solatium but also pecuniary loss. It was designed to cover all damages under the general "fair and just" compensation standard.[6]

---

[5] In S. Speiser, 1 *Recovery for Wrongful Death* §3.45 (2nd ed. 1975), the following statement is made:

"The general rule is that damages for loss of decedent's services are not to be given merely in reference to the loss of a legal right. They may include compensation for prospective loss of services which the decedent had no legal obligation to render if the evidence adduced is sufficient to justify a reasonable expectation that such services would have been rendered had decedent survived."

We adopted this rule in *Salerno v. Manchin*, 158 W. Va. 220, 213 S.E.2d 805, 807 (1974), where we permitted recovery of prospective services over the life expectancy of the beneficiary.

[6] The statutory language quoted in *Turner* was:

*Turner* and our subsequent cases involving the right to obtain punitive damages under our wrongful death statute do not have any extended discussion of this point. Certainly, W. Va. Code, 55-7-5, which creates the substantive right for an action for wrongful death, specifically encompasses wrongful acts that lie beyond mere negligence since the statute includes "death [which] shall have been caused under such circumstances as amount in law to murder in the first or second degree, or manslaughter."[7]

While we have not frequently discussed the underlying rationale with regard to punitive damages, it is clear that our law follows the general rule that such damages are to punish the wrongdoer and to deter others in order to prevent further repetition of their reckless or malicious acts which are the predicate for the right to seek punitive damages.[8] In Syllabus Point 5 of *Spencer v. Steinbrecher*, 152 W. Va. 490, 164 S.E.2d 710 (1968), we held:

---

"Section 6, c. 103, of the Code, provides that: 'In every such action the jury may give such damages as they shall deem fair and just not exceeding ten thousand dollars.' " 40 W. Va. at 688, 22 S.E. at 87.

[7] The pertinent portion of W. Va. Code, 55-7-5, is:

"Whenever the death of a person shall be caused by wrongful act, neglect, or default, and the act, neglect or default is such as would (if death had not ensued) have entitled the party injured to maintain an action to recover damages in respect thereof, then, and in every such case, the person who, or the corporation which, would have been liable if death had not ensued, shall be liable to an action for damages, notwithstanding the death of the person injured, and although the death shall have been caused under such circumstances as amount in law to murder in the first or second degree, or manslaughter."

[8] One of our earliest definitions of what acts may sustain a claim for punitive damages is found in Syllabus Point 3 of *Stevens v. Friedman*, 58 W. Va. 78, 51 S.E. 132 (1905):

"In actions of tort, where gross fraud, malice, oppression, or wanton, willful, or reckless conduct or criminal indifference to civil obligations affecting the rights of others appear, or where legislative enactment authorizes it, the jury may assess exemplary, punitive or vindictive damages, these terms being synonymous. Mayer v. Frobe, et al., 22 S.E. 58, 40 W. Va. 246."

*See also* Syllabus Point 3 of *Jopling v. Bluefield Water Works & Improvement Co.*, 70 W. Va. 670, 74 S.E. 943 (1912).

> "Punitive or exemplary damages are damages which together with and in reasonable proportion to the amount of compensatory damages will punish the defendant and in the judgment of the jury be sufficient to deter others from engaging in like course of conduct."

In *Pendelton v. Norfolk & Western Railway Co.*, 82 W. Va. 270, 278, 95 S.E. 941, 944 (1918), in speaking of punitive damages, we said, "The object of such punishment is to deter the defendants from committing like offenses in the future." *See generally* 22 Am. Jur.2d, *Damages* §237 (1965); 25 C.J.S. *Damages* §117(1) (1966); K. Redden, *Punitive Damages* §2.1 (1980).

Certainly, the deterrence principle of punitive damages is perfectly compatible with a wrongful death claim. Indeed, that principle may be even more appropriate in a wrongful death action since, if the death was a result of the malicious, reckless or intentional act of the defendant, the consequence of that act is more severe than when the result is a personal injury.

The defendant argues that since W. Va. Code, 55-7-6 (1965), speaks in terms of pecuniary or financial loss punitive damages should be excluded. The fact that the wrongful death statute never spelled out particular items of damages has not precluded this Court in the past from concluding that certain elements of damages could be obtained.

Thus, in *Turner v. Norfolk & Western Railroad Co.*, 40 W. Va. 675, 22 S.E. 83 (1895), and our earlier cases, where the only standard was "fair and just," we permitted recovery for solatium, for pecuniary losses and for punitive damages. Again, in *Lester v. Rose*, 147 W. Va. 575, 130 S.E.2d 80 (1963), when we construed W. Va. Code, 55-7-6, after it had been amended in 1955 to include an additional $10,000 for pecuniary loss, we refused to treat the amending language to mean that pecuniary loss had to be shown to obtain the maximum amount of $20,000. And, finally, in *Stamper v.*

*Bannister,* 146 W. Va. 100, 118 S.E.2d 313 (1961), we held that hospital, medical and funeral expenses could be recovered as part of the pecuniary loss even though W. Va. Code, 55-7-6 (1955), did not expressly provide for their recovery.

Most commentators agree that, in the absence of a specific legislative prohibition against recovery of punitive damages in a wrongful death action, the best position consistent with public policy is to permit recovery of punitive damages where the facts warrant. *E.g.,* K. Redden, *Punitive Damages* §4.2(A)(3) (1980); S. Speiser, *Recovery for Wrongful Death* §3.4 (2nd ed. 1975); comment, *Constitutional Law—Wrongful Death,* 8 Cumb. L. Rev. 567, 574 (1977); note, *Punitive Damages in Wrongful Death,* 20 Clev. St. L. Rev. 301 (1971). The rationale for this policy is that, if the defendant, acting recklessly, maliciously or wilfully, can be held liable for punitive damages if he injures the person, he ought to equally be held liable for punitive damages where the same quality of act kills the individual. Other courts have adopted this viewpoint. *E.g., Martin v. United Security Services, Inc.,* 314 So.2d 765 (Fla. 1975), citing *Swartz v. Rosenkrans,* 78 Colo. 167, 240 P. 333 (1925), and *Wagner v. Gibbs,* 80 Miss. 53, 31 So. 434 (1902). *See also* Annot., 63 A.L.R.2d 1327 (1959). We, therefore, conclude that in an appropriate case punitive damages may be recovered in an action for wrongful death.

In the *Martin* case, the Florida Supreme Court recognized that, as a predicate to punitive damages, the defendant's acts had to be of the traditional quality to trigger a punitive damage award and there must be some actual damages shown. We believe this view is consistent with West Virginia's punitive damage law. *E.g., Spencer v. Steinbrecher,* 152 W. Va. 490, 164 S.E.2d 710 (1968); *Raines v. Faulkner,* 131 W. Va. 10, 48 S.E.2d 393 (1947). Finally, under the Wrongful Death Act, W. Va. Code, 55-7-6 (1965), under consideration in this case, it is clear that the maximum recovery for all damages was limited to $110,000 plus the reasonable funeral, hospital, medical and other expenses. Thus, while punitive damages may be recovered,

they must be added with the other damages and be within the statutory limit of $110,000.[9]

## IV.

### PREJUDGMENT INTEREST

The remaining issue relates to whether prejudgment interest can be obtained in a wrongful death action. Of necessity, the resolution of this issue will apply to a personal injury action also since, where possible, we have maintained a similarity of damages unless the Wrongful Death Act provided otherwise.

McCormick in his work on *Damages* (1935) discusses the historical development of interest as a part of damages and notes that this area of the law was initially retarded by the general abhorrence of usury.[10] It cannot be doubted, however, that with the development of a complex industrial and commercial society, the courts began to recognize business realities.

In contractual claims, interest was awarded as a part of the damages when the principal amount sued for was a calculable sum. In *Cresap v. Brown*, 82 W. Va. 467, 96 S.E. 66 (1918), we reviewed at some length the type of cases in

---

[9] The parties did not raise in the trial court, and it is therefore not before us, the question of whether a municipality may be held liable for punitive damages. *See, Recovery of Exemplary or Punitive Damages from Municipal Corporation,* Annot., 1 A.L.R.4th 448 (1980). We also wish to make clear that we do not hold as a matter of fact that the appellant is entitled to punitive damages but only that the trial court could not hold as a matter of law that punitive damages are not a part of the recoverable damages in a wrongful death action.

[10] McCormick in §51 summarizes this point:

"It is only in modern times that the practice of bargaining for conventional interest has come to be sanctioned by law. Formerly, all agreed compensation for the use of money was condemned as 'usury,' but now the term 'usury' has come to be applied only to excessive interest above the lawful rate allowed by statute. The inherited religious prejudices against interest generally have slowed the development of the practice of giving interest as damages. It comes in first as allowance discretionary with the jury, and only gradually finds its place as an element of compensation which can be claimed as a matter of right."

*See also* D. Dobbs, *Remedies* §3.5 (1973).

which interest could be recovered as a part of the total damages:

> "[T]he jury is permitted to increase the damages by an amount equal to interest, in cases involving the destruction of property by wrongful acts, using the value of the property as the basis of the calculation. ... [T]he owner of personal property, suing for damages in trover or trespass de bonis asportatis, is generally held to be entitled to recover the equivalent of interest calculated on the value thereof, as damages ... interest [is recoverable] on the value of property wrongfully sold by a sheriff, under an execution, in an action on an indemnifying bond. ...

> "The modern rule in some jurisdictions sanctions the allowance of an addition to the damages actually found, equal to interest thereon, in actions for breaches of contract, when a clear, firm, and certain basis for right of recovery of a certain sum at a definite time is established, whether the contract be for the payment of money or performance of some other act. ..." 82 W. Va. at 476-77, 96 S.E. at 70. (Citations Omitted)

The Fourth Circuit, in the leading case of *Chesapeake & Ohio Railroad Co. v. Elk Refining Co.*, 186 F.2d 30 (4th Cir. 1950), dealt with the recovery of damages for the value of a trailer destroyed at a train crossing. It determined that, under West Virginia law, the owner could recover, as an additional part of its damages, interest on the value of the trailer from the date of the loss. Besides citing *Cresap*, *supra*, the court relied on *McCullough v. Clark*, 88 W. Va. 22, 106 S.E. 61 (1921), and *Pittsburgh & West Virginia Gas Co. v. Pentress*, 84 W. Va. 449, 100 S.E. 296 (1919). The Fourth Circuit also placed particular reliance on our earlier case of *Talbott v. West Virginia C. & P. Railroad Co.*, 42 W. Va. 560, 26 S.E. 311 (1896), where, in a negligence action to recover damages for the killing of a horse by a railroad company, we said:

> "They [the jury] had the right to add the interest from the time of the loss to the finding of their verdict." 42 W. Va. at 562, 26 S.E. at 312.

There can be little doubt that, independent of any statute, this Court in *Cresap*, as well as in *Bischoff v. Francesa*, 133 W. Va. 474, 493-94, 56 S.E.2d 865, 876 (1949), has recognized that in contract actions where the principal is certain or can be rendered certain by some reasonable calculation, we have permitted, as an additional part of the damages, interest on the principal. Undoubtedly, W. Va. Code, 56-6-27,[11] embodies this principle. We have applied the statute to an action for damages for negligent delivery of goods on the theory that the original obligation arose out of a contract. *Williams v. Baltimore & Ohio Railroad Co.*, 9 W. Va. 33 (1876). *See generally* 22 Am. Jur.2d *Damages* §183 (1965); 25 C.J.S. *Damages* §120 (1966).

Moreover, it can be seen that under *Cresap*, *Williams* and *Talbott*, our Court permits recovery of interest as a part of damages for loss of personal property where the loss was based on negligence. This was the view that the Fourth Circuit took of our law in *Elk Refining, supra,* when it permitted recovery of interest as a part of damages on the value of a trailer negligently damaged. This appears to be the general rule elsewhere. *See* Annot., 36 A.L.R.2d 337, 473 (1954).

In negligence actions involving personal injury or death, courts have been more reluctant to permit interest as a part of damages on the principal, although it has been allowed in several jurisdictions. *In re Air Crash on May 25, 1979*, 480 F.Supp. 1280 (D.C.Ill. 1979); *State v. Phillips*, 470 P.2d 266 (Alaska 1970); *Wetz v. Thorpe*, 215 N.W.2d 350 (Iowa 1974).

Most commentators take the position that there are certain elements of damages in a personal injury action, that can be rendered certain by calculation and when those elements represent a direct pecuniary loss to the injured

---

[11] W. Va. Code, 56-6-27, provides:

"The jury, in any action founded on contract, may allow interest on the principal due, or any part thereof, and in all cases they shall find the aggregate of principal and interest due at the time of the trial, after allowing all proper credits, payments and sets-off; and judgment shall be entered for such aggregate with interest from the date of the verdict."

party interest on these elements should be allowed as an additional part of the damages. These ascertainable elements would include hospital, medical, drug, rehabilitation and like expenses that have been incurred by the injured party prior to the time of the trial. Another ascertainable element would be lost wages incurred by the injured party prior to the time of the trial. McCormick characterizes these items as "pecuniary" losses and concludes that interest on these amounts should be allowed as an additional part of the damages.[12] *See also* D. Dobbs, *Remedies* §3.4 n. 4 (1973); 22 Am.Jur.2d *Damages* §191 (1965). The basis for this rule is that interest on these elements serves to compensate for the loss of the use of funds that have been expended. This theory is certainly compatible with interest awarded as an additional part of the damages for the economic loss suffered in contract actions when recovery is sought for damage to or destruction of personal property.

In *Busik v. Levine*, 63 N.J. 351, 307 A.2d 571 (1973), *app. dism'd*, 414 U.S. 1106, 38 L.Ed.2d 733, 94 S.Ct. 831,[13] the court considered a challenge to a procedural rule it had adopted allowing prejudgment interest in personal injury cases. The court stated that interest as a part of damages was a judicially-created principle. The court also noted that interest as a part of damages is allowed by statute in a

---

[12] "It seems clearly desirable that the jury should at least be permitted, if not required, to add interest as compensation for delay in payment of those purely pecuniary losses which result from an injury to the person. Expenditures for doctor's and nurses' bills and other necessary charges would come within the classes above of claims liquidated or those based upon customary valuations of services, and interest should be added as of right." C. McCormick, *Damages* §56 (1935).

[13] The procedural rule contained in *Busik* was:

"(b) *Tort Actions*. In tort actions, including products liability actions, the court shall include in the judgment interest at 6% per annum on the amount of the award from the date of the institution of the action or from a date 6 months after the date of the tort, whichever is later. The contingent fee of an attorney shall not be computed on the interest so included in the judgment." 63 N.J. at 357, 307 A.2d at 574.

number of states.[14] The court's reason for allowing prejudgment interest was that the parties would settle personal injury lawsuits more quickly.

There may be some merit in New Jersey's approach. However, we doubt that prejudgment interest alone would play a primary role in affecting the settlement of any personal injury litigation where there were any substantial issues involved. More to the point, we do not perceive that prejudgment interest should be utilized in a context foreign to its historical purpose regardless of the benign goal sought. As noted from our discussion of our earlier cases and the law in general, we believe the purpose of awarding interest as a part of the damages, where there is an ascertainable pecuniary loss, is to fully compensate the injured party for the loss of the use of funds that have been expended. The interest on these elements of damages should be allowed up to the date of trial.

We recognize that there are damage elements in a personal injury action which are not pecuniary losses such as disfigurement, pain, suffering and mental anguish. Compensatory interest is not recoverable on these items since they do not involve any actual pecuniary loss. Compensation for such damages involve an almost totally subjective damage assessment by the jury such that the reasonably calculable standard is not met.

As to future pecuniary losses, we do not believe that interest can be awarded for those elements because of the

---

[14] The language in *Busik* with regard to these points is:
"There are a number of States which so provide by statute. See Colorado: *Rev Stats.* 1963, Ann., § 41-2-1; Louisiana: *LSA-R.* S. 13:4203; Michigan: *Stat.* § 27A.6013, M. C. L.A. § 600.6013, New Hampshire: *RSA* § 524:1-b (Supp.); New York: *CLPR* § 5001(a) (damages to property); North Dakota: § 32-03-05; Oklahoma: 12 *Okla. St. Ann.* § 27(2); Rhode Island: *Gen. Laws*, § 9-21-10. We add, parenthetically, that it is of no moment that there the principle was established by the Legislature. As we have already noted, the subject of interest on claims rests wholly in case law in our State, and, assuming as we do for the moment that the issue is one of substantive law, the power and responsibility of the judiciary to deal with the subject in the absence of a statute cannot be questioned." 63 N.J. at 360, 307 A.2d at 576.

special rule that takes into account inflationary trends and a discount for present-day value which is used in calculating these figures. *See* D. Dobbs, *Remedies* §8.7 (1973); note, *Inflation and Future Loss of Earnings*, 27 Baylor L. Rev. 281 (1975); comment, *Damages for Loss of Future Income: Accounting for Inflation*, 6 U. San. Fran. L. Rev. 311 (1972). *Cf. Salerno v. Manchin*, 158 W. Va. 220, 213 S.E.2d 805, 809 (1974).

The award of interest as a part of the compensation for pecuniary loss occurring prior to trial is included as a part of the general damage award. *Cf. Cresap v. Brown*, 82 W. Va. 467, 96 S.E. 66 (1918); Talbott v. West Virginia *C. & P. Railroad Co.*, 42 W. Va. 560, 562, 26 S.E. 311, 312 (1896); *Williams v. Baltimore & Ohio Railroad Co.*, 9 W. Va. 33 (1876).

This type of compensatory interest as a part of the damages is different than post-judgment interest which bases interest on the entire amount of the jury verdict.[15] The interest after the verdict is ordinarily set by statute, while interest as compensatory damages is set by the courts. In this State, we have a rather liberal interest statute, which enables the successful party to obtain interest from the date of the jury verdict, not just from the date of the judgment. W. Va. Code, 56-6-29.[16]

---

[15] In D. Dobbs, *Remedies* §3.5 (1973), this statement is made:

"A sharp distinction is drawn between this kind of interest and interest on the judgment itself. Prejudgment interest is awarded in a good many cases, but very often with reluctance, and sometimes it is denied altogether. Sometimes courts emphasize the distinction between judgment and pre-judgment interest by saying that pre-judgment interest is really a form of *damages*, while judgment interest is interest as such, or interest *eo nomine*. In general, the rules for the grant or denial of pre-judgment interest are more complicated than the rules for the award of judgment interest." (Emphasis in the Original)

[16] W. Va. Code, 56-6-29, provides:

"When there is a recovery on a bond conditioned for the payment of money, as well as in all cases where a judgment or decree is rendered or made for the payment of money, it shall be for the aggregate of principal and interest due at the date of the verdict, if there be one, otherwise at the date of the judgment or decree, with interest thereon from the date of such verdict, if there be one,

We believe that a rule permitting additional damages by way of compensatory interest on pecuniary losses incurred prior to trial in personal injury actions as well as wrongful death claims is consistent with our prior case law and our liberal interest statute. In the present case such compensatory interest could be obtained for medical, hospital, similar expenses and other such pecuniary losses to the dependent distributees. The interest is recoverable from the date the expense was incurred up to the date of the trial. Interest will not be allowed on future pecuniary losses, nor will interest be available on any punitive damages that might be awarded.

Recognizing that our rule permitting recovery of prejudgment interest in tort actions for pecuniary losses represents a new element of damages, we address the question of retroactivity. In Syllabus point 5 of *Bradley v. Appalachian Power Co.*, 163 W. Va. 332, 256 S.E.2d 879 (1979), we summarized various factors that would determine whether full retroactivity would be extended to a judicial opinion.[17] Applying these factors, we conclude that

---

otherwise from the date of such judgment or decree, except in cases where it is otherwise provided. In any action founded on a tort, if the verdict be for the plaintiff, the judgment shall be for the amount of the verdict with interest thereon from the date of the verdict."

The reviser's note to this statute in the 1931 Code states:

"The last sentence is new and is intended to settle, in accord with the latest decisions, a controversy which has prevailed in the West Virginia decisions as to whether interest in a tort action shall be allowed from the date of the verdict or the date of the judgment. See Long v. Pocahontas Consolidated Collieries Co., 83 W. Va. 380; Wehrle v. Wheeling Traction Co., 85 W. Va. 398. See also 26 W. Va. Law Quarterly 193, where the cases are collected and discussed."

[17] Syllabus Point 5 of *Bradley* states:

"In determining whether to extend full retroactivity, the following factors are to be considered: First, the nature of the substantive issue overruled must be determined. If the issue involves a traditionally settled area of law, such as contracts or property as distinguished from torts, and the new rule was not clearly foreshadowed, then retroactivity is less justified. Second, where the overruled decision deals with procedural law rather than substantive, retroactivity ordinarily will be more readily accorded. Third, common law decisions,

full retroactivity should be given to the prejudgment interest rule.

We have previously pointed out that prejudgment interest as a part of damages is a judicial rule. We have no prior case law in this area and, therefore, are overruling no law but fashioning an additional element of damages under our common law. *See* Syllabus Point 2, *Morningstar v. Black & Decker Manufacturing Co.*, 162 W. Va. 852, 253 S.E.2d 666 (1979). Prejudgment interest for pecuniary loss has historically been recognized in the law of contracts and, therefore, today's holding is only an extension into the law of torts. Furthermore, the rule is of limited applicability since it involves only pecuniary losses that are subject to reasonable calculation that exist at the time of the trial. There are no broad public issues, constitutional or statutory provisions involved nor is the rule a radical departure from our present law viewed in the light of our contract cases which extend prejudgment interest to damages arising from negligence.

For the foregoing reasons, the summary judgment order of the Circuit Court is reversed and the case is remanded for further proceedings consistent with this opinion.

*Reversed and remanded.*

---

when overruled, may result in the overruling decision being given retroactive effect, since the substantive issue usually has a narrower impact and is likely to involve fewer parties. Fourth, where, on the other hand, substantial public issues are involved, arising from statutory or constitutional interpretations that represent a clear departure from prior precedent, prospective application will ordinarily be favored. Fifth, the more radically the new decision departs from previous substantive law, the greater the need for limiting retroactivity. Finally, this Court will also look to the precedent of other courts which have determined the retroactive/prospective question in the same area of the law in their overruling decisions."